[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1064 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1065 
The appellant, Luther Jerome Williams, was convicted of intentional murder during the course of a robbery, made a capital offense by § 13A-5-40(a)(2), Code of Alabama 1975. The jury recommended that the appellant be sentenced to death. The trial court accepted its recommendation and sentenced the appellant to death by electrocution.
A brief chronology of the events leading to the appellant's conviction and this appeal is necessary to understand the issues raised in this appeal. The evidence tended to show the following:
On January 22, 1988, a 1981 dark blue Oldsmobile Regency automobile was stolen from a motel parking lot in Birmingham, Alabama. In the trunk of this vehicle was, among other items, a .22 caliber pistol. A dark blue car arrived at the Smithfield housing project in Birmingham later that same evening and the appellant was identified as the sole occupant. On the morning of January 23, 1988, John Robert Kirk was on his way home from work. He stopped his vehicle — a red 1984 Chevrolet pickup truck with a camper on the back — near the West Blocton exit on Interstate 59 South in Tuscaloosa County. The appellant and two men were traveling south on Interstate 59 in the stolen Oldsmobile. After noticing the victim's vehicle beside the road, they stopped and confronted him. The appellant led the victim to a nearby wooded area and shot him once in the left side of the head, "execution style," with the .22 caliber pistol which had been in the trunk of the stolen Oldsmobile. The victim's body was left at the site of the shooting, and his money and vehicle were taken.
Later that same morning, several witnesses identified the appellant as the driver of a red "camper truck" which was parked at the Smithfield housing project. One of these witnesses, Priscilla Jones, a relative of the appellant's, testified that the appellant had visited her on the day of the murder. She stated that the appellant told her that "he had killed a white man and stole his truck," and that he proceeded to show her the weapon, which she described as having a white handle.
On the night of January 24, 1988, after responding to a call placed by a Rosie Mims, members of the Birmingham Police Department interviewed Priscilla Jones regarding the appellant. During this interview, the Birmingham police learned of the appellant's statement to Ms. Jones concerning the shooting of a white man. They were also informed that he was staying at an apartment in the housing project, and that he was an escapee from the supervised intensive restitution (SIR) program.
During the very early morning hours of January 25, 1988, after verifying that the *Page 1066 
appellant had indeed escaped from the SIR program and that a warrant was still outstanding, the Birmingham police went to the apartment in the Smithfield housing project where the appellant was reportedly staying. The officers talked with the lessee of the apartment, Margie Bush. They inquired as to the whereabouts of the appellant and his girlfriend, Debra "Bootsie" Bush. Margie Bush turned toward a curtain which separated the front of the apartment from the back bedroom and shouted for Bootsie, who then appeared from behind the curtain. Bootsie stated that she did not know where the appellant was at that time. However, one of the officers happened to look behind the curtain and saw the appellant lying in the bed. After a struggle, the appellant was taken into custody.
The supervising officer then informed Margie Bush that the appellant was thought to have a gun and requested permission to search the apartment for it. Margie Bush gave her permission. During the search, Bootsie stated that the appellant had hidden the gun in the bedroom. The murder weapon was found inside a black purse located on top of a dresser in the room in which the appellant was apprehended.
The appellant was indicted on April 29, 1988, for the murder of John Robert Kirk during a robbery. After his indictment, the appellant was sent at his own request to the Taylor Hardin Secure Medical Facility for an evaluation of his mental competency to stand trial. Evidence was presented at trial that while at Taylor Hardin, the appellant made the statement "I have killed one white m__________ f__________; I'll kill another one." However, there was some conflict regarding the person to whom the statement was directed. The appellant was found to be competent to stand trial and was discharged from the facility on December 23, 1988.
After numerous continuances, the appellant's trial began on November 27, 1989. The jury returned a verdict of guilty on November 30, 1989. The sentencing phase of the appellant's trial began on December 1, 1989, and that same day, the jury returned its recommendation that the appellant be sentenced to death.
Initially, we observe that many of the issues that the appellant raises in his supplemental brief are issues as to which no objections were made during the course of the trial. While this will not bar our review in a case involving the death penalty, it will weigh against any claim of prejudice. "Rule 45A requires this court to 'notice any plain error or defect . . ., whether or not brought to the attention of the trial court, and [to] take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.' "Arthur v. State, 575 So.2d 1165 (Ala.Cr.App. 1990), cert. denied, 575 So.2d 1191 (Ala. 1991).
 I
The appellant contends that he was denied his right to a speedy trial due to the 22-month delay between the date of his arrest and the date of his trial.
In analyzing such a contention, four factors must be considered in determining whether the accused has been denied a speedy trial: the length of the delay, the reasons for the delay, the appellant's assertion of his right to a speedy trial, and the degree of prejudice to the appellant's case caused by unnecessary delay. Barker v. Wingo, 407 U.S. 514,530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).
In the case now before us, 22 months elapsed between the date of the appellant's arrest and the date of his trial. However, such a period is not presumptively prejudicial, rather, "the length of delay that will provoke such an inquiry is necessarily dependent upon the particular circumstances of the case." Barker, at 530-31, 92 S.Ct. at 2191-92. See also UnitedStates v. Herman, 576 F.2d 1139 (5th Cir. 1978) (22-month delay not unduly arduous); Kelley v. State, 568 So.2d 405
(Ala.Cr.App. 1990) (15-month delay deemed not excessive under the circumstances); Smelley v. State, 564 So.2d 74
(Ala.Cr.App.), cert. denied, *Page 1067 564 So.2d 89 (Ala. 1990) (28-month delay did not warrant reversal).
"Although the length of the delay has been said to trigger the examination of the remaining factors, most courts do not analyze a speedy trial argument without taking into account all four factors discussed in Barker." Goodson v. State,588 So.2d 509, 511 (Ala.Cr.App. 1991). We now look to the reasons for the aforementioned delay. In his brief, the appellant claims that he caused none of the delay. However, the record clearly contradicts this claim. The pretrial history of this case is as follows:
January 25, 1988 — Appellant arrested for escape from SIR program.
January 27, 1988 — Capital warrant issued for appellant.
April 29, 1988 — Appellant indicted by Tuscaloosa County grand jury for murder during first degree robbery.
July 20, 1988 — Appellant files a motion to continue arraignment. Motion granted.
August 19, 1988 — Appellant arraigned, at which time he pleaded not guilty. Appellant petitioned for psychiatric evaluation to determine his competency to stand trial. Petition granted. Appellant ordered to be admitted to Taylor Hardin Secure Medical Facility as bed space became available.
November 9, 1988 — Appellant admitted to Taylor Hardin.
December 23, 1988 — Appellant released from Taylor Hardin.
January 25, 1989 — Report from Taylor Hardin submitted to the trial court.
February 1, 1989 — Pretrial conference, Trial set for April 3, 1989.
February 9, 1989 — Appellant files a plethora of motions and requests an evidentiary hearing on many of them.
March 9, 1989 — Hearing on previously filed motions. Appellant announces his intent to file for a continuance of April 3, trial date. The state opposes the granting of a continuance and announces that it is ready for trial.
March 10, 1989 — Appellant files motion for continuance. Motion granted.
May 23, 1989 — Appellant files motion for continuance because one of his attorneys was injured in an automobile accident. Motion granted.
August 8, 1989 — Pretrial hearing.
November 27, 1989 — Trial begins.
This court has previously held that, "[d]elays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker." Walker v. State, 386 So.2d 762,763 (Ala.Cr.App.), cert. denied, 386 So.2d 765 (Ala. 1980).
Although the appellant claims in his brief that he asserted his right to a speedy trial, a review of the record fails to support his claim. We find no evidence that the appellant either demanded or made any attempt to obtain an earlier trial. This point, coupled with the fact that the appellant is largely responsible for the delay of his trial, leads us to conclude that the appellant was not denied his right to a speedy trial.
 II
The appellant next contends that the trial court erred in denying his motion to sequester the venire during voir dire examination. The appellant claims that the trial court's denial of his motion limited his opportunity "to expose the effect of pretrial publicity on the venire."
This court has heretofore concluded that there is no requirement mandating that the defendant be allowed individual voir dire of potential jurors and sequestration of potential jurors during voir dire. Browning v. State, 549 So.2d 548
(Ala.Cr.App. 1989); Bell v. State, 475 So.2d 601 (Ala.Cr.App. 1984), aff'd, 475 So.2d 609 (Ala.), cert. denied,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985). Any decision to allow individual questioning or sequestration of potential jurors is within the discretion of the trial court. Heath v.State, 480 So.2d 26 (Ala.Cr.App. 1985).
The appellant claims that pretrial publicity may have affected the venire. *Page 1068 
However, during voir dire examination, the appellant, as well as the state, had ample opportunity to question the veniremembers about their knowledge of the case at hand. When asked, only one member of the venire stated that he had any knowledge of the case. This veniremember was ultimately excused and did not sit on the jury. Furthermore, the appellant presented no evidence of a significant possibility of prejudice due to pretrial publicity.[1] See Brown v. State, 571 So.2d 345
(Ala.Cr.App.), writ quashed, 571 So.2d 353 (Ala. 1990). Absent such a showing, the mere fact that veniremembers might know something about a case is not sufficient to prove prejudice.United States v. Hawkins, 658 F.2d 279 (5th Cir. 1981); Waldropv. State, 462 So.2d 1021 (Ala.Cr.App.), cert. denied,472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1984). Therefore, we find that the trial court correctly denied the appellant's motion to sequester the venire during voir dire.
 III
The appellant contends that the trial court erred by granting the state's challenge for cause of a veniremember based on her adversity to the death penalty. The following exchange took place during voir dire:
 "THE COURT: . . . you had indicated earlier that you had strong religious beliefs against capital punishment. Would those beliefs be so strong that if you sat on this case and you heard the evidence and you decided under the law and under the statutes that the defendant in fact was guilty beyond a reasonable doubt, would you because of your beliefs vote not guilty rather than vote guilty whereby the defendant would be placed in jeopardy of receiving capital punishment?
 "[JUROR]: I wouldn't vote not guilty if I was convinced he was guilty.
 "THE COURT: Let's suppose, then, at that point the verdict were to be guilty, would you refuse to vote for capital punishment, that is, the death penalty under all circumstances regardless of the evidence?
 "[JUROR]: I don't think that I would try to obstruct justice. I would say yes, that I would vote for the capital punishment, but it would be very difficult for me. I think there would be an after effect, my conscience, and I would question my decision, whether I had done the right thing; but I wouldn't want to do something that was illegal against the State.
 "THE COURT: So, if the evidence did convince you that under the law that this person was guilty of capital murder and it came down to voting for the death penalty, you could do that?
 "[JUROR]: Well, I say that now, but when I got in there I might change my mind and not do it, and that wouldn't be right.
 "THE COURT: Unfortunately people can change their mind, but the question right now is — and you're under oath — I have to ask you again —
 "[JUROR]: I'm just going to say I wouldn't do it. I'm going to say no.
"THE COURT: You would not do it?
"[JUROR]: Right.
 "THE COURT: In answer to my question, if I asked you in this case if the State proved their case beyond a reasonable doubt and to a moral certainty in the case, and the defendant in your mind was guilty of capital murder, would you refuse to impose the death penalty regardless of the evidence?
 "[JUROR]: I would refuse to do it because I would be afraid."
This veniremember was further questioned by defense counsel and by the prosecutor, and she continued to vacillate on whether she would be capable of voting to impose the death penalty. *Page 1069 
The "standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' "Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852,83 L.Ed.2d 841 (1985). See also Haney v. State, 603 So.2d 368
(Ala.Cr.App. 1991). In the present case, the answers given by the prospective juror clearly indicate the possibility that she would be unable to perform her duties as a juror. In reaching its decision to exclude a juror for cause, the trial court need not determine whether this impairment has been demonstrated with "unmistakable clarity." Wainwright, supra 469 U.S. at 424, 105 S.Ct. at 852. It is sufficient if the trial court, after taking into consideration the veniremember's answers and demeanor, "is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." Wainwright, supra at 426, 105 S.Ct. at 853. See also Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144 (1988); Whisenhant v. State, 555 So.2d 219
(Ala.Cr.App.), aff'd, 555 So.2d 235 (Ala. 1989), cert. denied,496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990); Brownleev. State, 545 So.2d 151 (Ala.Cr.App. 1988), aff'd,545 So.2d 166 (Ala. 1989), cert. denied, 493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989).
In reviewing the answers provided by the veniremember during her individual voir dire, we find no error in her exclusion. Additionally, the appellant included a footnote in his brief claiming that five other veniremembers were "improperly questioned in such a manner as to suggest answers which the court then used to exclude them." However, we note that this claim is totally unsupported by the record.
 IV
The appellant challenges the receipt into evidence of the .22 caliber pistol which was identified as the murder weapon, contending that no "voluntary" consent to the search had been given before the police searched the apartment. The state contends in its brief that the appellant lacked standing to challenge the search since he had no expectation of privacy in the area searched.
The evidence at the suppression hearing showed that the gun was found in a woman's purse on a dresser in the apartment in which the appellant said he had been staying since his "escape" from the SIR program approximately one month earlier. The appellant testified at the suppression hearing that he had been living with his girlfriend, Debra Bush, her grandmother, Margie Bush, and Precious Bush. The lease on the apartment had been signed by the grandmother and Precious. The appellant was staying in an area to which all the occupants of the apartment had access. It was separated from the rest of the apartment by a curtain hung from the ceiling.
The police, acting on a tip, went to the apartment to apprehend the appellant. When the police arrived at the apartment, they spoke to Margie Bush, who called to the appellant's girlfriend, Debra Bush. Debra appeared and told the police that the appellant was not in the apartment. One of the officers then shined his flashlight into the room and saw the appellant behind the curtain which separated the rooms. Officers escorted the appellant, who was putting up a fight, from the apartment. The officers had information that the appellant was armed. Lieutenant Jordan informed Margie Bush that the appellant had a gun. Jordan also heard Debra Bush state that the appellant had hidden a gun in the bedroom. Lieutenant Jordan testified:
 "I asked [the grandmother] if she was the houselady, and she said, 'Yes, I am.' I said, 'You're the resident here?' She said, 'Yes, I have a lease.' I said, 'There's a possibility there is a gun in that room.' And she said, 'If there is a gun in that room, I want you to get it.' She did make the statement — She used the word 'gangster.' She said, 'I don't want gangsters in my house.' She said, 'Please, you find it if there's a gun.' I then said, 'Ms. Bush, you understand *Page 1070 
that it may involve some searching; and by that I mean that we are going to have to move some things out of the way or we might have to look through things.' She said, 'Do whatever you have to do. If there's a gun in here, I want you to get it.' "
Jordan also stated that Debra Bush, said "He's got a gun; he's got a gun. I know he's got a gun. I tried to get it and hide it, but he got it and I don't know where he put it." Jordan said that he took Debra's statement as an implied consent to search the premises.
The appellant also stated at the hearing that he did not know whose purse the gun was found in, only that it was not his purse. He did not know how the gun got into the purse. He stated that he knew the gun was in the room but that he did not know that it was in the purse. The appellant's only contention on appeal is that the search was without the "voluntary" consent of the grandmother.
When a motion to suppress evidence in a criminal case is based on the ground that the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek the remedy of exclusion. See LaFlave, 4 Search and Seizure § 11.3 (2d ed. 1987). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v. United States,390 U.S. 377, 389, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1967). To show that a party has standing to object to a search, the party must have a possessory interest in the premises searched. Rakas v.Illinois, 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387
(1978). Cases seem to imply that the appellant might have a possessory interest in the room since he "lived" there. SeeRakas. However, the inquiry does not stop there. The " 'capacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.' " Mancusiv. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2123,20 L.Ed.2d 1154 (1967), quoting Katz v. United States, 389 U.S. 347, 352,88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of hisFourth Amendment rights infringed." Rakas, 439 U.S. at 134,99 S.Ct. at 425.
We believe that the evidence in this case leads to the conclusion that the appellant had no expectation of privacy in the woman's purse in which the gun was found. This conclusion is supported by the appellant's own testimony at the suppression hearing. The appellant stated that he did not know how the gun got into the purse and that he did not know who owned the black purse. Further testimony showed that all the occupants of the apartment had access to the room, since their clothes were all stored there. We find further support for our position in Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556,65 L.Ed.2d 633 (1980). The facts in Rawlings are very similar to those in the instant case. In Rawlings, officers went to a home with an arrest warrant for one of the occupants. When they arrived there were six people in the home and they could smell marijuana. Several officers left to obtain a search warrant while the occupants of the house were detained. A number of controlled substances were found in the purse of Vanessa Cox. Rawlings claimed ownership of the drugs in Cox's purse. The appellant objected to the search at trial. The lower court and the Supreme Court of Kentucky concluded that Rawlings had no expectation of privacy in Cox's purse. The United States Supreme Court affirmed, stating:
 "In holding that petitioner could not challenge the legality of the search of Cox's purse, the Supreme Court of Kentucky looked primarily to our then recent decision in Rakas v. Illinois, supra, where we abandoned a separate inquiry into a defendant's 'standing' to contest an allegedly illegal search in favor of an inquiry that focused directly on the substance *Page 1071 
of the defendant's claim that he or she possessed a 'legitimate expectation of privacy' in the area searched."
Rawlings, 448 U.S. at 104, 100 S.Ct. at 2561 (citation omitted). This concept was first developed in relation to automobiles. See Rakas supra. The court in Rakas focused on the "area" that was searched. Though the area involved a location in a car, the Court stated, "But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place. . . ."
As Justice Powell wrote in his concurring opinion,
 "The ultimate question, therefore, is whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances. . . . Thus, the Court has examined whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy — that is, precautions customarily taken by those seeking privacy."
Rakas, 439 U.S. at 152, 99 S.Ct. at 435.
"A defendant must also establish a legitimate expectation of privacy in the particular area searched in order for aFourth Amendment challenge to be allowed." United States v. Meyer,656 F.2d 979, 981 (5th Cir. 1981). Alabama has consistently so held. Kaercher v. State, 554 So.2d 1143 (Ala.Cr.App. 1989), writ denied, 554 So.2d 1152 (Ala. 1989); German v. State,492 So.2d 622 (Ala.Cr.App. 1985); Ex parte Collier, 413 So.2d 403
(Ala. 1982). It is up to the defendant to show that he has a "legitimate expectation of privacy" in the area searched. SeeKaercher, 554 So.2d at 1148. The factors to be considered in determining whether such expectation exists include whether he can exclude others from the place searched, whether he has exhibited a subjective expectation that the area would remain free from governmental invasion, and whether he took normal precautions to maintain his privacy. See Kaercher,554 So.2d at 1148; citing Rawlings.
After a review of the facts of the instant case, we cannot say that the appellant had a legitimate expectation of privacy in the purse. Thus the appellant has no standing to challenge the search of the purse.
Furthermore, even if the standing argument fails, we believe that the search would be upheld. The search was commenced with the consent of the leaseholder. We find little support in the record for appellant's allegation that the consent was coerced.
 V
The appellant next argues that the trial court erred in allowing an incriminating statement made by him while at the Taylor Hardin Secure Medical Facility to be received into evidence. While the appellant was in Taylor Hardin he had an altercation with a fellow patient. One of the staff at the facility heard the argument. (There appears to be some conflict in the record as to whom the appellant made the statement to, whether it was made to the staff member or to the patient. However, this does not affect the admissibility of the statement.) The appellant was heard to say, "I have killed one white m__________ f__________; I'll kill another one." The member of the staff who heard the statement testified to its contents at trial. The appellant argues that the statement should not have been allowed into evidence because he had not been read his Miranda rights prior to making the statement. The appellant argues that "Taylor Hardin Secure Medical Facility operates as an investigative tool for the State in securing incriminating statements from patients committed there for psychiatric evaluations." Thus, appellant claims that he was in police custody and should have been read his Miranda rights.
Even if we agree with the appellant that the statement was made in the presence of "authorities," the admissibility of the statement would not be changed. Our law is clear that a statement made during a custodial interrogation by police in which the defendant was not given his Miranda rights is inadmissible at trial. See Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda does not apply when the statement is made to a *Page 1072 
private citizen. See Traylor v. State, 439 So.2d 178
(Ala.Cr.App. 1983).) As the Supreme Court further stated inMiranda, "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, 384 U.S. at 478, 86 S.Ct. at 1630. "An unsolicited remark, not in response to any interrogation, does not fall within the Miranda rule." Crawford v. State,479 So.2d 1349, 1352 (Ala.Cr.App. 1985). The circumstances surrounding the statement in the present case do not support the appellant's argument that it was made during a custodial interrogation. Though we do not agree with the appellant's remarks concerning Taylor Hardin, even if the appellant had been in a police station and had made the same statement under the same circumstances, it would still be correctly received into evidence. "A spontaneous statement, blurted out by an accused and volunteered to a police officer prior to any questioning, is admissible against him even though he was not given Miranda warnings." Magwood v. State, 494 So.2d 124, 136
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986);Smith v. State, 489 So.2d 638 (Ala.Cr.App. 1986). It is clear after a review of the facts surrounding the statement that it was freely made and not in response to questions asked during interrogation. Thus it was correctly received into evidence.
 VI
The appellant next argues that the prosecutor impermissibly stated during his rebuttal closing argument in the guilt phase of the trial that the appellant would kill again. No objection was made to this comment. While the fact that no objection was made will not preclude review in a case where the appellant has been sentenced to death, it will weigh against any claim of prejudice. See Dill v. State, 600 So.2d 343 (Ala.Cr.App. 1991);Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala. 1991). " 'This court has concluded that the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' " Dill, 600 So.2d at 356, quoting Kuenzel, 577 So.2d at 489.
The prosecutor made the following statement during his rebuttal closing argument:
 "Circumstantial evidence is kind of like a big rat and a little rat in a box. Circumstantial evidence is when you put that lid on that box at night and make sure there are no holes. And you open up the box the next day. The big rat . . . is still there but the little mouse is gone. You look down there and you say, 'Well, that big rat ate that little mouse' which is what you have in this case. But then what happens is that you look at that big rat and what does the big rat say? This is not circumstantial evidence. He says, 'I ate the mouse.' He says that to some of the first people that saw him. He also has in his possession some of the fur of the little mouse that the little mouse had. And also at a later time he says 'I ate the little mouse and I will eat another little mouse if you give me a chance.' "
The appellant maintains that the underlined portion of the argument was a comment that the appellant would kill again. (The analogy is similar to statements made by the trial court in its instructions to the prospective jurors during voir dire and statements made by defense counsel in his closing argument.) The prosecutor's statement was a comment on the statement made by the appellant, which was received into evidence at trial. See part V of this opinion. " 'The test of legitimate argument is that whatever is based on a fact or facts in evidence is within the scope of proper comment in argument to the jury.' " White v. State, 587 So.2d 1218, 1229
(Ala.Cr.App. 1990). "Whatever is in evidence is considered subject to legitimate comment by counsel." Bankhead v. State,585 So.2d 97 (Ala.Cr.App. 1989), aff'd, 585 So.2d 112 (Ala. 1991). See also Ward v. State, 440 So.2d 1227 (Ala.Cr.App. 1983). "The prosecutor has the right to present his impressions *Page 1073 
from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way." (Citations omitted.) Donahoo v.State, 505 So.2d 1067, 1072 (Ala.Cr.App. 1986).
Furthermore, " '[s]tatements of counsel in argument to the jury must be viewed as having been made in the heat of the debate, and such statements are usually valued by the jury at their true worth.' " Stephens v. State, 580 So.2d 11
(Ala.Cr.App. 1990), aff'd, 580 So.2d 26 (Ala. 1991), quotingHarris v. State, 539 So.2d 1117, 1123 (Ala.Cr.App. 1988). No plain error occurred here.
 VII
The appellant also argues that the prosecutor emphasized the race of the appellant to urge the jury to return a verdict of death. No objections were made to any evidence received at trial that may have emphasized the race of the appellant. We must apply the plain error analysis, i.e., is the error so egregious that it seriously affected the fairness and integrity of the proceeding? See Dill and Kuenzel.
The following statement made by the appellant while he was at Taylor Hardin, was received into evidence. "I killed one white m__________ f__________; I'll kill another one." (See part V of this opinion.) Priscilla Jones also testified that the appellant said that he had killed a white man. These statements were not brought out to emphasize race. These were statements made by the appellant himself. There is absolutely no evidence in the record that the prosecuting attorney tried to prejudice the minds of the jurors by emphasizing the difference in race between the appellant and the victim.
Furthermore, the trial court made the following admonition to the jury concerning race:
 "The fact that the deceased was a white man or that the defendant was a black man is irrelevant insofar as your determination and duty in this case is concerned. Whether or not race played any part in the death of John Robert Kirk and regardless of the presence, if any, of any racial epithets or statements, considerations of race simply do not enter into this courtroom or inject themselves into your consideration of the evidence in the case."
No plain error exists here.
 VIII
The appellant further argues that he was prejudiced by the following remarks made by the prosecutor in his closing argument in the guilt phase of the trial:
 "You heard his comment about 'Well, it's just as possible that Trosky and Carmichael were the ones that shot Mr. Kirk as anybody else,' and I submit to you: What fathom of evidence at all indicates that they were involved in the execution of John Robert Kirk? What fathom of evidence at all indicates that this weapon hidden in a purse in that very room — if you are going to use this as an item to pawn, you don't hide it in the room that you are staying in; you hide it somewhere else or you get rid of this quick. If you are going to use it as a tool of the trade, you keep it handy."
 "The last thing I will submit to you is that, you know, when you talk about circumstantial evidence, one thing everybody says is when some parts of the case are circumstantial, circumstantial evidence is just as good as regular evidence. You notice he didn't comment on this part at all. In this case, first you have the circumstance that he is found with the murder weapon. That in and of itself is sufficient circumstances unless something else is shown as to why that person had that gun other than they did the killing. There is no evidence of that whatsoever."
Defense counsel had, prior to the above comments made by the prosecutor, argued the following in his closing argument:
 "Reasonable doubt is a doubt for which you have a reason. If you can tell me, ladies and gentlemen, that based on the facts in this case that you can exclude Trosky Gregory and Albert Carmichael as the persons that pulled the trigger in this case based on the evidence that is *Page 1074 
before you like going out to the scene. . . .
". . . .
 "I want to talk to you about the gun. To the person who shot Mr. Kirk, this is a weapon, but to a thief who steals and pawns things, this is money; this is money. To the person who shot Mr. Kirk, you take this with the knowledge that Mr. Kirk has been shot and you get rid of this evidence. To the person who has stolen that and has not used it as a murder weapon, you keep it until you sell it. Which did Luther Williams do? He kept it in a purse at the house. He didn't get rid of it."
Initially, we observe that no objections were made to the complained-of portions of the prosecutor's argument. While this does not bar review in a case involving the death penalty, it will weigh against any prejudice that the appellant may have suffered. See Kuenzel.
It is clearly impermissible for a prosecutor to directly comment on a defendant's failure to testify at trial. SeeGriffin v. California, 380 U.S. 609, 85 S.Ct. 1229,14 L.Ed.2d 106 (1965). However, the above comments made by the prosecutor in his rebuttal were replies to the comments made by defense counsel in his closing argument. "When the door is opened by defense counsel's argument, it swings wide, and a number of areas barred to prosecutorial comment will suddenly be subject to reply." Davis v. State, 494 So.2d 851, 855 (Ala.Cr.App. 1986). Recently this court, in Stephens, supra, stated the following regarding prosecutor's statements in arguments:
 " '. . . "[I]t must be examined in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer." Washington v. State, 259 Ala. 104, 65 So.2d 704
(1953); Gibson v. State, 347 So.2d 576
(Ala.Crim.App. 1977); Rutledge v. State [482 So.2d 1250] [Ms. 5 Div. 610, August 16, 1983] (Ala.Crim.App. 1983). The rule in Alabama is that "remarks or comments of the prosecuting attorney, including those which might otherwise be improper, are not grounds for reversal when they are invited, provoked, or occasioned by accused's counsel and are in reply to or retaliation for his acts and statements." Shewbart v. State, 33 Ala. App. 195, 32 So.2d 241, cert. denied, 249 Ala. 572, 32 So.2d 244
(1947); Camper v. State, 384 So.2d 637 (Ala.Cr.App. 1980); Wilder v. State, 401 So.2d 167 (Ala. 1981), cert. denied, 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981); Miller v. State, 431 So.2d 586
(Ala.Crim.App. 1983); Rutledge, supra.' "
Stephens, 580 So.2d at 21, quoting Henderson v. State,460 So.2d 331, 333 (Ala.Cr.App. 1984). The United States Supreme Court in United States v. Robinson, 485 U.S. 25, 108 S.Ct. 864,99 L.Ed.2d 23 (1988), narrowed the Court's holding in Griffin
concerning a prosecutor's comment on the defendant's failure to testify and stated the following:
 " '[T]he protective shield of the Fifth Amendment should [not] be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case.' . . .
". . . .
 " '[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence. . . . To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another.' "
Robinson, 108 S.Ct. at 869. (Citations omitted.)
After evaluating the prosecutor's comments in relation to the whole case, we cannot say that this comment, which was a reply in kind to a statement made by defense counsel in his closing argument, amounted to plain error. See Dill. To constitute plain error the error must be so "egregious as to 'seriously affect the fairness or integrity of the judicial proceedings.' " Dill, 600 So.2d at 355; quoting, Ex parte Womack,435 So.2d 766 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436,78 L.Ed.2d 367 (1983). *Page 1075 
Furthermore, there is some question whether the comment was intended to be a reference to the appellant's failure to testify. See Duncan v. Stynchcombe, 704 F.2d 1213 (11th Cir. 1983).
 IX
The appellant next argues in his supplemental brief that the trial court erred in not instructing the jury on the lesser included offenses of felony murder and robbery in the first degree. Initially we observe that no objection was made to this failure to instruct. We believe no plain error occurred here. There was absolutely no evidence presented during the trial that would warrant an instruction on felony murder or robbery in the first degree.
The evidence at trial tended to establish that the victim was killed, execution style, with one bullet to the head. Powder burns were found on his head. The appellant was seen driving the victim's truck on the same day that the murder occurred. The appellant went to visit Ms. Jones that same day and showed her a gun and bullets and told her that he had killed a white man. There is absolutely no evidence to support an instruction on felony murder. As Judge Bowen stated in White, supra:
 " '[T]he purpose of the felony-murder doctrine is to hold felons accountable for unintended deaths caused by their dangerous conduct.' W. LaFave and A. Scott, 2 Substantive Criminal Law § 7.5 at 210 (1986). See Ex parte Ritter, 375 So.2d 270, 273-74
(Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1133 (1980); Ex parte Bates, 461 So.2d 5, 7 (Ala. 1984). Here the evidence shows that the defendant intentionally killed his wife. There is no rational basis for a verdict convicting him of felony-murder. § 13A-1-9(b)."
White, 587 So.2d at 1231.
Furthermore, the facts do not support a charge on robbery in the first degree. No error occurs in not giving a charge on a lesser included offense when there is no reasonable theory to support the lesser offense. See Dill. " 'A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense.' " Dill,600 So.2d at 360, quoting Gurganus v. State, 520 So.2d 170, 174
(Ala.Cr.App. 1987). No plain error exists here.
 X
The appellant next argues that the instruction regarding circumstantial evidence given by the trial court in its instruction in the guilt phase of the trial, lessened the degree of proof necessary to convict the appellant and shifted the burden of proof. Counsel made no objection at trial. In fact, defense counsel stated that he was satisfied with the court's instruction. The trial court gave the following instruction on circumstantial evidence:
 "Circumstantial evidence simply means all evidence of an indirect nature. In other words, there is direct evidence and there is indirect evidence. So circumstantial evidence is simply evidence of an indirect nature. When the evidence against a defendant is partially circumstantial or indirect, his innocence should be presumed by the jury until his guilt is established by the evidence in all of the material aspects of the case beyond a reasonable doubt and to a moral certainty, the same as if the evidence were wholly direct or wholly circumstantial. The question always comes back to: Did the State by the evidence prove the defendant guilty beyond a reasonable doubt?
 "The test of the sufficiency of circumstantial evidence in a criminal case is whether the circumstances as proven are capable of an explanation upon a reasonable hypothesis consistent with the defendant's innocence, and if they are so capable of such an explanation, then a defendant should be acquitted. Because in that instance what we are saying is that you can explain away the evidence to the point where you reach a reasonable basis for doubting the evidence before you, and in that event you're not *Page 1076 
convinced beyond a reasonable doubt, so we come back to the basic instruction that the State carries the burden of proof.
 "So circumstantial evidence is as good as any other kind of evidence, but like that of positive evidence it must produce in the minds of the jury a conviction of guilt beyond a reasonable doubt. So the presence, or absence even, of circumstantial evidence does not change the burden of proof. In any case on any kind of evidence, the burden always remains on the State to prove the defendant guilty beyond a reasonable doubt. No more, no less."
The trial court thoroughly charged the jury on circumstantial evidence and reasonable doubt. We believe this charge was sufficient. See Wabbington v. State, 446 So.2d 665 (Ala.Cr.App. 1983), cert. denied, 467 U.S. 1254, 104 S.Ct. 3542,82 L.Ed.2d 846 (1984). See also Marlow v. State, 538 So.2d 804
(Ala.Cr.App. 1988). This in no way conflicts with our holding in Davenport v. City of Birmingham, 570 So.2d 1298 (Ala.Cr.App. 1990), in which we reversed the trial court based on its instruction on circumstantial evidence. In Davenport, there was absolutely no instruction on the proof necessary to convict on circumstantial evidence. There was such an instruction in this case.
 XI
The appellant next argues that the trial court erred in instructing the jury that they had a duty to reconcile the testimony of all the witnesses to make them speak the truth. He maintains that this instruction "impermissibly conditioned the juror's right to disbelieve even uncontroverted testimony" and violated his right to a fair trial. The record reflects that no objection was made to this instruction at trial. The trial court gave the following instruction:
 "You should, in the trial of this case, of course, attempt in every way you can to reconcile all of the evidence in this case so as, if possible, to make all witnesses speak the truth. If you cannot do that, and you find that the evidence is in conflict on material points, then it's up to the jury to decide what are the true facts and what is usually accepted and received by the jury and used by the jury and what is due to be rejected or ignored. In other words, you may have to pick and choose through this evidence and decide just what is believable and what is not. But in passing upon that, you do not have to capriciously accept or reject the testimony of any witness.
 "You should look at all of the evidence in the case with a view of determining what the true facts are and make your decision from the evidence. If you find that some of that evidence is unworthy of belief, you have the right to throw it out. But you still have the remainder, and that would be what you would act upon. But you first start out with all of the evidence with a view of determining what the true facts are and you sort through it, always remembering that your job is to determine what are the true facts."
When the single instruction underlined above is viewed in the abstract, it could be confusing. However, "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Kuenzel, 577 So.2d at 517. The instruction was a charge on the jury's function as the sole factfinder. The jury has the " 'responsibility of assessing the credibility of each witness and weighing all the evidence, whether direct or circumstantial, as they viewed it.' Cumbo v. State,368 So.2d 871 (Ala.Crim.App. 1978), cert. denied, 868 So.2d 877 (Ala. 1979). Moreover, a conflict in the testimony is the sole province for the jury to determine. . . ." Boggan v State,455 So.2d 228, 240 (Ala.Cr.App. 1984). See also White v. State,546 So.2d 1014 (Ala.Cr.App. 1989). There was no plain error in the above instruction.
 XII
The appellant next argues that the following instruction on reasonable doubt violated the holding in Cage v. Louisiana, *Page 1077 498 U.S. 89, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990):
 "Now I have mentioned the term 'reasonable doubt' just as the attorneys have because that's a basic, fundamental concept in the trial of a criminal case. What is 'beyond a reasonable doubt and to a moral certainty'? First, the two terms are synonymous. That is, they mean the same thing. Whatever is beyond a reasonable doubt is to a moral certainty. 'Beyond a reasonable doubt' simply means beyond a doubt for which a reason can be given.
 "The phrase 'reasonable doubt,' then is rather self-explanatory and efforts to further define it do not always help to clarify it in any way. But it might help some to say that the doubt which would justify an acquittal must be an actual doubt which arises from the evidence or from a lack of evidence or from contradictory evidence and which remains after a careful consideration of all of the evidence in the case. The doubt which justifies an acquittal cannot be a mere fanciful or vague or conjectural or speculative doubt, but it must be a reasonable doubt which, as I said, comes from the evidence or from the lack of evidence.
 "If after considering all of the evidence in this case, you have an abiding conviction of the truth of the charge in this case and you're convinced beyond a reasonable doubt, then it would be your duty to convict the defendant of the offense of capital murder. The reasonable doubt which entitles the accused to an acquittal is not a mere fanciful or vague or conjectural or speculative doubt, but, as I said, it must arise from the evidence or from a lack of evidence."
Initially, we observe that no objection was made to this instruction during the trial. While this failure will not bar review in this case, it will weigh against any claim of prejudice. See Kuenzel.
In Cage, the complained-of instruction on reasonable doubt contained the phrases, "grave uncertainty," "actual substantial doubt," and "moral certainty." It appears from the opinion that the Court's problem with the instruction lay in the phrases, "grave uncertainty" and "actual substantial doubt." The United States Supreme Court stated:
 "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause."
We do not believe that Cage is applicable to the charge in the instant case. The trial court did not use the key terms "grave uncertainty" and "actual substantial doubt" used inCage. The trial court thoroughly instructed the jury that its reasonable doubt must be based on evidence in the case or the lack thereof. The instruction in Cage is distinguishable from the instruction in the present case.
We note that the instruction given in this case is similar to one this court has recently held was not violative ofCage. See Adams v. State, 587 So.2d 1265 (Ala.Cr.App. 1991). No plain error occurred here.
 XIII
The appellant also contends in his supplemental brief that there was insufficient evidence to find him guilty of murder committed during the course of a robbery. We do not agree. The evidence was clearly sufficient for the jury to find beyond a reasonable doubt that the appellant was guilty of capital murder.
The state's evidence tended to show that on January 23, 1988, the victim was shot, execution style, with one bullet to the head. The appellant and two other individuals were on Interstate 59, South, when they saw the victim's car on the side of the road. They took the victim to a wooded area and shot him once in the head at very close range. The victim's money and truck were taken from the site. Later that same day, *Page 1078 
the appellant was seen driving the victim's truck. The appellant went to visit a relative and showed her a gun and bullets and said that he had killed a white man and stole his truck. A statement was also admitted which was made by appellant in which he said, "I have killed one white m__________ f__________; I'll kill another one." This evidence was clearly sufficient to present the issue of appellant's guilt to the jury for their determination. There is no reason to disturb their verdict on appeal. "We will not substitute our judgment for that of the jury." Neal v. State, 460 So.2d 257,260 (Ala.Cr.App. 1984).
 XIV
The appellant further argues in his supplemental brief that the trial court erred in allowing the testimony of a psychiatrist during the penalty phase of his trial. Specifically, he maintains that the testimony of the psychiatrist, which included his observations concerning the "future dangerousness" of the appellant, violated his constitutional rights. See Estelle v. Smith, 451 U.S. 454,101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).
Initially, we note that no objection was made to this testimony at trial. Thus, we must evaluate the alleged defect under the plain error doctrine. Is the defect so egregious that the fairness and integrity of the judicial proceeding has been affected? See Kuenzel.
As the state notes, prior to the commencement of the trial the appellant filed a motion requesting that a psychiatrist evaluate the appellant to assist him in his defense and to aid counsel in the "sentencing phase of the trial if defendant is convicted." He also filed a petition for "inquisition on the sanity" of the defendant. It is clear that the appellant's sanity at the time of the offense was put at issue prior to the trial.
After the appellant had been found guilty and during the sentencing phase of the proceedings, appellant introduced the testimony of Professor Raymond Sumrall, a certified social worker, as to the issue of mitigating evidence. Sumrall testified that the act of murdering an individual would be inconsistent with the appellant's previous behavior. To rebut this testimony, the prosecution presented the testimony of Dr. Bernard Bryant, a psychologist. He testified that the appellant has a personality disorder, that treatment for this disorder is often ineffective, and that because of the attitude of people with personality disorders they are very unlikely to change.
The appellant relies on Estelle v. Smith, supra, as the basis for his argument that his constitutional rights were violated.
 "The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, commands that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.' The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.' "
Estelle, 451 U.S. at 462, 101 S.Ct. at 1872 (citations omitted). The United States Supreme Court in Estelle held that under the circumstances of the case, the psychiatrist could not be allowed to testify concerning the "future dangerousness" of the defendant. Estelle is readily distinguishable from the instant case. In Estelle, the prosecutor had the burden of proving the existence of future dangerousness, beyond a reasonable doubt, at the sentencing hearing. Further, inEstelle, the mental competency of the defendant was not placed at issue.
We quote the recent Alabama Supreme Court case of Ex parteWilson, 571 So.2d 1251, 1258 (Ala. 1990):
 "We are mindful that the defendant offered the psychiatric testimony in this case in order to establish mitigating circumstances under [Ala.] Code 1975, § 13A-5-51(2). The defendant clearly bears the burden of proving mitigation under § 13A-5-45(g). However, § 13A-5-45(g) states that once the defendant interjects the issue of mitigation 'the *Page 1079 
State shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence.' Thus, the State was justified in producing its own expert to rebut the evidence of mitigation offered by the defendant's expert."
The Supreme Court went on to say further that Estelle was readily distinguishable. They stated "the Supreme Court [of the United States] noted that 'a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase' as opposed to the case where the defendant intends to offer no such evidence." Wilson, 571 So.2d at 1259, quoting from Estelle, 451 U.S. at 472, 101 S.Ct. at 1878. InWilson, the Supreme Court stated that the appellant had been notified that the examination would cover any evidence of mitigating evidence. As the state argues, it appears from the motion filed by the appellant that he was aware that the examination would cover any evidence offered during the sentencing phase of the trial.
 XV
The appellant next contends that the prosecution's verdict was obtained by violating the principles enunciated inBooth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440
(1987). Initially, the appellant argues that it was error for the victim's wife to sit at counsel table during the trial. This is specifically provided for by statute in § 15-14-50 et seq., Code of Alabama 1975. Appellant contends that this statute is unconstitutional. He also argues that the prosecution prejudiced him by introducing the widow to the jury. We note that no objection was made at trial. This court recently addressed these issues in Henderson v. State,583 So.2d 276 (Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991). We stated:
 "This argument has been previously addressed — and rejected — by this Court in both capital as well as non-capital cases. In Crowe v. State, 485 So.2d 351, 362-63 (Ala.Cr.App. 1984), rev'd on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986), a capital murder case in which the death penalty was imposed, this Court specifically rejected the notion that the seating of the victim's widow at counsel table for the prosecution violated any constitutional rights of the accused. Likewise, in Anderson v. State, 542 So.2d 292, 304-05 (Ala.Cr.App. 1987), writ quashed, 542 So.2d 307 (Ala. 1989), cert. denied, 493 U.S. 836, 110 S.Ct. 116, 107 L.Ed.2d 77 (1989), a capital murder case in which life imprisonment without possibility of parole was imposed, we rejected this argument, holding as follows:
 " 'Furthermore, under § 15-14-55, Code of Alabama 1975, "A victim of a criminal offense shall be exempt from the operation of rule of court, regulation, or statute or other law requiring the separation of exclusion of witnesses from court in criminal trials or hearings." Under § 15-14-56(a), "[w]henever a victim is unable to attend such trial or hearing or any portion thereof by reason of death . . . the victim's family may select a representative who shall be entitled to exercise any right granted to the victim, pursuant to the provisions of this article." '
". . . .
 "However, in both Crowe and Anderson this Court has approved the seating of a member of the victim's family alongside the prosecutor. Logically, it would therefore follow that there is nothing wrong with introducing that person to the jury."
Henderson, 583 So.2d at 286.
The appellant further argues that the trial court erred in allowing the victim's widow to testify in the guilt phase of the trial. Her testimony consisted of identifying the camper truck that the victim was driving, identifying certain items of evidence, and testifying as to the victim's habits. He contends that this testimony violates the United States Supreme Court holdings in Booth and South Carolina v. Gathers, 490 U.S. 805,109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). As the Supreme Court held in each of these cases, evidence concerning victim impact is inadmissible in the *Page 1080 
sentencing phase of a capital trial. This is so because, "Our capital cases have consistently recognized that '[f]or purposes of imposing the death penalty . . . [the defendant's] punishment must be tailored to his personal responsibility and moral guilt.' " Gathers, 490 U.S. at 810, 109 S.Ct. at 2210. As the state correctly argues in its brief, the rulings of these cases has been limited to circumstances arising in the sentencing phase of a death penalty case. See Pierce v. State,576 So.2d 286 (Ala.Cr.App. 1990), cert. denied, 576 So.2d 258
(Ala. 1991). Furthermore, the evidence in no way violated the Supreme Court's holdings in Booth and Gathers. The testimony was relevant to the state's case and was correctly received into evidence.
 XVI
The appellant further argues that the following statement made by the prosecutor in his opening statement during the sentencing phase was error. The prosecutor said:
 "And I anticipate upon hearing that evidence and all other offered mitigating circumstances and evaluating the weight of these two amounts of evidence simply this: To the reasonable satisfaction of the jury, the appropriate punishment for the personal responsibility and moral guilt of the defendant is nothing other than death."
The appellant maintains that "reasonable satisfaction" was not the correct standard upon which the jury would fix punishment. Initially, we observe that no objection was made at trial. Thus, we must evaluate the above comment according to the plain error doctrine and ask whether the error is so egregious that it affected the fairness of the proceeding. SeeDill and Kuenzel.
We do not believe that this comment, made once during a lengthy opening statement by the prosecutor, affected the fairness of the proceedings. The trial court thoroughly instructed the jury on the finding of aggravating and mitigating circumstances. The court told the jury that they must be satisfied beyond a reasonable doubt that any aggravating circumstance had been proven. The court also stated in its instruction, "If there's a dispute as to the factual existence pertaining to any of the offered mitigating circumstances, then the State would have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence." The isolated comment made by the prosecutor in no way constitutes plain error.
 XVII
The appellant next contends that several of the jury instructions in the sentencing phase were constitutionally flawed. No objections were made to these instructions at trial. " 'While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.' Exparte Kennedy, 472 So.2d 1106, 111 (Ala. 1985)." Kuenzel. As provided for by Rule 45A, A.R.App.P., we must review any case involving the death penalty for plain error. As Judge Bowen restated in Kuenzel, plain error is, " 'error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.' " Kuenzel, 577 So.2d at 489, quoting United States v. Butler,792 F.2d 1528, 1535 (11th Cir.), cert. denied, Waites v.United States, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). We recognize that instructions receive a more intense scrutiny from appellate courts than from the jurors themselves.
As the Supreme Court of the United States stated inCalifornia v. Brown, 479 U.S. 538, 107 S.Ct. 837,93 L.Ed.2d 934 (1987), when deciding whether a trial court erred in delivering a jury instruction, we must consider the interpretation a reasonable juror places on the instruction,
 " 'focus[ing] initially on the specific language challenged. Francis v. Franklin, 471 U.S. [307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985)]. If the specific instruction fails constitutional muster, we then review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law." *Page 1081 
California v. Brown, 479 U.S. at 541, 107 S.Ct. at 839.
The first instance complained of by the appellant is the following instruction: "[Y]our verdict in this case, your deliberation, should be based on the evidence you've seen and heard and the law that has been explained to you." The appellant argues that this statement limits the jury's discretion and does away with the jury's option to impose a sentence of life without parole. He contends that the instruction prevented the jury from making a "moral" response.
A review of the jury charge shows that the instruction in no way impinged on the ability of the jury to sentence the appellant to life without parole. The trial court gave very detailed instructions on the mitigating circumstances which would militate against the death penalty. As the United States Supreme Court stated in Gardner v. Florida, 430 U.S. 349,97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." Gardner, 430 U.S. at 358,97 S.Ct. at 1204.
The appellant next argues that the trial court erred in failing to instruct the jury on "their unfettered option" to impose a sentence of life without parole. The jury may not recommend mercy without reason. See Morrison v. State,500 So.2d 36 (Ala.Cr.App. 1985), aff'd, 500 So.2d 57 (Ala. 1986), cert denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207
(1987). The jury does not have an "unfettered option" to recommend a sentence of life without parole unless after weighing the aggravating and mitigating circumstances it finds that life without parole is warranted. The record clearly shows that the trial court did instruct the jury, on several occasions, regarding its option to sentence the appellant to life without parole. Also, the court thoroughly instructed the jury on aggravating and mitigating circumstances.
The appellant also argues that the trial court erred in instructing the jury that it was to avoid any arbitrary factor in reaching a decision regarding sentencing. No objection was made to this instruction during the trial. The appellant states that the jury might easily have believed that it "could not consider mercy or sympathy or any factor in mitigation that was not expressly addressed by the trial judge." The trial court gave the following instruction:
 "In reaching your findings concerning the aggravating and mitigating circumstances, and in determining what your recommendation will be as to the punishment in this case, you must avoid any influence of passion, prejudice, or arbitrary factors. Your determination, your verdict in this case, your deliberation, should be based on the evidence that you've seen and heard and the law that has been explained to you. There is no room in the trial of such cases for any influence of passion, prejudice, or any type of arbitrary factors to come into your determination or consideration."
The trial court did not err in giving this instruction. SeeCalifornia v. Brown, supra. See also Saffle v. Parks,494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). In California v.Brown, the jury was instructed not to be swayed by "mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." As the Supreme Court stated:
 "An instruction prohibiting juries from basing their sentencing decisions on factors not presented at the trial, and irrelevant to the issues at the trial, does not violate the United States Constitution. It serves the useful purpose of confining the jury's imposition of the death sentence by cautioning it against reliance on extraneous emotional factors, which, we think, would be far more likely to turn the jury against a capital defendant than for him."
California v. Brown, 479 U.S. at 543, 107 S.Ct. at 840. A similar instruction was considered by this court in Pierce, supra. Judge Tyson wrote:
 " 'In evaluating this alleged constitutional error, the Court must determine how a reasonable juror could construe *Page 1082 
the instruction. Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 1971-72, 85 L.Ed.2d 344 (1985). . . .' "
Pierce, 576 So.2d at 255, quoting Julius v. Jones,875 F.2d 1520, 1528 (11th Cir.), cert. denied, 493 U.S. 900,110 S.Ct. 258, 107 L.Ed.2d 207 (1989).
This court, in the recent case of Haney, supra, considered a comment made by the prosecutor in his closing argument, which asked the jury to put aside their sympathies. As Judge Patterson stated:
 "Our examination of the portion of the closing argument set out above leads us to the conclusion that it is no more than the prosecutor urging the jury not to be distracted by matters unrelated to the evidence, but to confine itself to the facts and the law."
Haney, 603 So.2d at 394. The same can be said of the instruction in the instant case. The jury was thoroughly instructed that it could consider any evidence in considering mitigating circumstances. The trial judge's comment in the instruction, when viewed with the instruction as a whole, was not plain error.
Furthermore, as the State argues, the instruction is substantially the same as the pattern instruction inProposed Pattern Jury Instructions for use in the SentencePhase of Capital Cases Tried under Act No. 81-178. " '[W]e do not think we should hold that the trial judge plainly erred
when he instructed the jury pursuant to a pattern jury instruction 'recommended' by this Court, especially in the absence of an objection or request from the defendant.' "Kuenzel, 577 So.2d at 520, quoting Ex parte Harrell,470 So.2d 1309, 1315 (Ala. 1985).
The appellant further argues that the trial court erred in instructing the jury that one aggravating circumstance had already been proven by the fact that the jury had found the appellant guilty of a capital offense. He states that this forced him to overcome a presumption that the death sentence should be imposed. We do not agree. As Judge Tyson wrote inPierce, supra:
 " 'Alabama's "statutory sentencing scheme does not provide, that if even one aggravating circumstance is found, 'death is presumed to be the proper sentence' unless overcome by sufficient mitigating circumstances." [Citation omitted.] Neither the oral charge of the trial judge nor Alabama's statutory sentencing scheme "presumes" that death is the appropriate punishment upon the finding of the existence of at least one aggravating circumstance.' Kuenzel, 577 So.2d 474 at 521. Thus, there is no 'automatic death penalty' upon conviction for a capital offense for which there is an 'overlap' between one of the elements of the offense and a statutory aggravating circumstance."
Pierce, 576 So.2d at 255; see also Kuenzel.
The appellant further contends that during the instructions in the sentencing phase, the trial court lessened the jury's responsibility by stating that its sentence was a recommendation to the trial court. He contends that this violates the holding of Caldwell v. Mississippi, 472 U.S. 320,105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Initially, we observe that no objection was made to this during the trial. As the state correctly argues:
 " '[T]he comments of the prosecutor and the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was 'advisory' and a 'recommendation' and that the trial court would make the final decision as to sentence does not violate Caldwell [v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231
(1985)].' Martin v. State, 548 So.2d [488, 494 (Ala.Cr.App. 1988), aff'd, 548 So.2d 496 (Ala. 1989)]."
Kuenzel, 577 So.2d at 502.
The appellant further contends that the trial court erred in giving the jury no guidance in weighing the aggravating and mitigating circumstances. No objection was made to this at trial. This will not bar review in a case involving the death penalty. See Kuenzel.
For the death penalty to be imposed in Alabama, it does not have to be proven that beyond a "reasonable doubt" *Page 1083 
the aggravating circumstances outweigh the mitigating circumstances. The aggravating circumstances must simply outweigh the mitigating circumstances. See § 13A-5-48, Code of Alabama 1975. As Judge Patterson wrote in Rutledge v. State,523 So.2d 1087 (Ala.Cr.App. 1987), rev'd on other grounds,523 So.2d 1118 (Ala. 1988):
 " 'While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, . . . the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party.' "
Rutledge, 523 So.2d at 1111-12, quoting Ford v. Strickland,676 F.2d 434, 442 (11th Cir. 1982), vacated, 696 F.2d 804 (11th Cir.), cert. denied, 464 U.S. 865, 104 S.Ct. 201,78 L.Ed.2d 176 (1983) (same statement is contained in both cases). See also Whisenhant v. State, 482 So.2d 1225 (Ala.Cr.App. 1982), aff'd in part and remanded, 482 So.2d 1241 (Ala. 1985). The trial court committed no error in failing to instruct the jury that the aggravating circumstances must outweigh the mitigating circumstances beyond a reasonable doubt.
After a review of the specific challenges to the jury instructions and a review of the jury instructions as a whole, we can find no error on the part of the trial court.
 XVIII
The appellant next argues that the trial court erred in its written findings as to mitigation. Specifically, he argues that the trial court erred in finding that the mitigating circumstance of the defendant's having no significant history of prior criminal activity under § 13A-5-51(1), Code of Alabama 1975, was not applicable. The trial court made the following findings:
 "The mitigating circumstances. The defense asserted the presence of mitigating circumstances. Although the defense did not rely on all of the statutory mitigating circumstances, the court reviews all of the statutory mitigating circumstances in this sentencing order.
 "1. The defendant has no significant history of prior criminal activity. See Ala. Code § 13A-5-51(1) (1982 repl. vol.). The court finds that this mitigating circumstance is inapplicable.
 "The defense argued that the defendant has no significant history of prior criminal activity. According to the defense this mitigating circumstance should be deemed established by the absence of previous convictions for crimes of violence. Although the defendant does not have a record of prior convictions for violent felonies, he does have a history of prior criminal activity, and that history is significant. In 1979 he was convicted of grand larceny. By his own account, he was sent to the Frank Lee Youth Center, but after only four months he was transferred to Draper prison. Then he was placed in a work-release program in Mobile, but was 'busted' for shoplifting and returned to prison, this time at Atmore. In 1981 he was convicted of burglary in the third degree. He served the two-year sentence. Obviously, though, he did not serve the entire sentence, for in 1982 he was convicted of possessing burglar's tools. In 1983 he was convicted of two counts of breaking and entering a motor vehicle and one count of burglary in the third degree. He served a split sentence on the burglary conviction. In 1984 he was convicted of receiving stolen property, burglary in the third degree, and violation of the Alabama Controlled Substances Act. He was given two fifteen year sentences to run concurrently on the first two convictions. He was on escape from these sentences when he committed this capital offense. He also has been convicted of giving false information and disorderly conduct. Moreover, in 1978 the defendant was adjudicated a youthful offender in 1978 based on a charge of grand larceny. The court can consider that adjudication. See Ala. Code § 15-19-7(a) (1982 repl. vol.) ('[I]f he is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered.'). This mitigating circumstance refers to no significant history of prior criminal 'activity,' *Page 1084 
not convictions. Even if that adjudication were not considered by the court though, the defendant nevertheless has an extensive criminal record.
 "Additionally, the defendant has served at least portions of six separate sentences. He has had at least one probation sentence revoked. He has violated the conditions in two separate work release programs. Thus, disregarding the youthful offender adjudication and the misdemeanor convictions, the defendant has five prior felony convictions.
 "The defense proffered the opinion of a witness that 'the defendant does not have a significant history of violent or assaultive behavior in his prior criminal activity.' That is true, but does not establish this mitigating circumstance. The statutory definition never refers to violent or assaultive conduct. The court discussed this circumstance to this degree only in deference to the defense's argument that it was present. The defendant's long and substantial history of criminal behavior requires the court to reject this mitigating circumstance."
We agree with the trial court. The appellant did have a significant history of prior criminal conduct. It was sufficient enough not to invoke the mitigating provision of § 13A-5-51(1), Code of Alabama 1975. This section states that, "Mitigating circumstances shall include . . . (1) The defendant has no significant history of prior criminal activity."
The appellant argues that § 13A-5-51(1) should apply since he has no prior convictions which involve violent behavior. We do not agree. "Unlike the aggravating circumstance related to prior criminal acts, this mitigating circumstance is not restricted to prior convictions of capital felonies or felonies in which violence was used." Colquitt, Death Penalty Laws, 33 Ala.L.Rev. 213, 300 (1982). We have upheld the practice of not applying this mitigating provision when the significant history was based on prior misdemeanor convictions. See Richardson v.State, 376 So.2d 205 (Ala.Cr.App. 1978), aff'd, 376 So.2d 228
(Ala. 1979).
Section 13A-5-51, Code of Alabama 1975, which lists mitigating circumstances, does not specifically state that the history of criminal activity referred to therein refers only to convictions for violent crimes. However, § 13A-5-49(2), Code of Alabama 1975, which lists aggravating circumstances, specifically provides that a conviction for a violent crime is an aggravating circumstance. Had the legislature intended that convictions for nonviolent crimes not be considered in determining whether there has been "no significant history of prior criminal activity" for purposes of determining the existence of mitigating circumstances, it would have specifically so stated in the statutes. The trial court committed no error in not finding as a mitigating circumstance that the appellant lacked a significant history of prior criminal activity.
The appellant also argues that the court erred in finding as a prior conviction the crime of escape from the SIR program. It is clear from the record that this escape was not considered in the trial court's review of mitigating circumstances. The trial judge referred to the fact that the appellant had escaped from the SIR program, but he does not cite that escape as a prior conviction.
It is clear from the record that the trial court allowed the appellant to introduce "any matter" which would point towards mitigation. No error occurred here. Clisby v. State,456 So.2d 99 (Ala.Cr.App. 1983), aff'd, 456 So.2d 105 (Ala. 1984).
 XIX
Last, the appellant argues that the trial court erred in considering a presentence report, which contained nonstatutory aggravating circumstances, a recommendation by the preparer, statements made by the appellant while counsel was not present, and hearsay. Initially, we observe that the appellant made no objection to this in the court below. Thus, we must apply the plain error doctrine. Is the error so egregious that the fairness of the proceedings were affected? See Dill andKuenzel. *Page 1085 
Initially, we recognize the important function that the presentence report serves. Section 13A-5-47(b) specifically provides for the preparation of presentence reports. "A presentence report is recognized as a valuable sentencing aid." Colquitt, Death Penalty Laws, 83 Ala.L.Rev. 213, 330 (1982).
Regarding the recommendation by the parole officer, this court has recently addressed this issue on several occasions. See Dill; Kuenzel; and Lawhorn v. State, 581 So.2d 1159, 1171
(Ala.Cr.App. 1990). We stated in Lawhorn:
 " 'Although we do not approve or condone such a recommendation, we find that even if such recommendation constitutes error, we would find that error harmless in this case. Rule 45, A.R.A.P. "[T]he mere presence of information in the pre-sentence report which should not be considered for the purpose of enhancing punishment is not, per se, prejudicial." Johnson v. State, 521 So.2d 1006, 1031 (Ala.Cr.App. 1986), affirmed, 521 So.2d 1018 (Ala.), cert. denied, 488 U.S. 876, 109 S.Ct. 193 [102 L.Ed.2d 162] . . . (1988).' "
Lawhorn, 581 So.2d at 1171, quoting Kuenzel, 577 So.2d at 527.
In both Lawhorn and Kuenzel this court noted that it was apparent from the trial court's findings that the court independently weighed the aggravating and mitigating circumstances and found that the aggravating circumstances outweighed the mitigating circumstances. It is apparent from a review of the trial court's findings in the instant case that the trial court independently weighed the evidence. The trial court's order complies with § 13A-5-47(d), Code of Alabama 1975. See Lawhorn.
The appellant further argues that the presentence report was improper since it contained hearsay statements. Judge Bowen recently addressed this issue in Kuenzel:
 " 'Courts are permitted to consider hearsay testimony at sentencing. . . . While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. . . . These protections apply not just to hearsay testimony but also to any information presented at sentencing. . . . When, as in this case, the defendant claims that his due process rights were violated by the sentencing court's reliance on materially false information, the defendant must establish not only that the disputed information is materially false or unreliable, but also that the sentencing judge relied on the information.'
 "United States v. Giltner, 889 F.2d 1004, 1007
(11th Cir. 1989). A sentencing judge may consider hearsay evidence so long as the defendant had a fair opportunity at rebuttal. Smiley v. State, 435 So.2d 202, 206 (Ala.Cr.App. 1983), Johnson v. State, 399 So.2d 859, 864 (Ala.Cr.App.), affirmed in part, reversed in part on other grounds, 399 So.2d 873 (Ala. 1979).
 "In Thompson [v. State], 503 So.2d [871,] at 880 [1986], this Court rejected the argument that the presentence report was inadmissible at the sentence hearing because, among other things, it 'included hearsay . . . [and] the summary of the crime was prejudicial':
 " 'It is clear to this court that the report is entirely consistent with Alabama's capital murder statute regarding evidence to be considered in sentencing. Section 13A-5-45(d), Code states, "[a]ny evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.' Further, the report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under § 13A-5-47 Code of Alabama, being specifically called for consideration by the trial court.
 " 'It is equally clear to this court that the summary of the offense contained in the pre-sentence report was not prejudicial to this appellant. He *Page 1086 
argues that this summary contained an opinion [by the parole officer] as to his culpability in the crime in question. This argument is without merit. The appellant's culpability was established by the jury's verdict of guilt. Further, the summary of the offense is consistent with the evidence presented by the State and with the appellant's own statement which was admitted into evidence at trial. The appellant was not prejudiced by this information.'
"Thompson, 503 So.2d at 880.
 "The exclusion of hearsay evidence that is highly relevant to a critical issue in the penalty phase of a trial may constitute reversible error. Green v. Georgia, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979)."
Kuenzel, 577 So.2d at 528-29. See also Dill, supra. The hearsay in the instant case is similar to that which the court ruled was not error to include in a presentence report in Thompson.
The appellant had every opportunity to refute the statements contained in the presentence report. No plain error exists here.
The appellant also contends that the inclusion in the presentence report of comments made by the appellant in an interview with his parole officer deprived him of his constitutional right against self-incrimination.[2] Initially, we note that no objection was made to this in the trial court. While this will not bar review in a case involving the death penalty it will weigh against any claim of prejudice. See Dill
and Kuenzel. We apply the same harmless error analysis that this court applied in Kuenzel and Dill. Like the statements inKuenzel and Dill, the statements in the report which were credited to the appellant were insignificant. (For a thorough discussion of this issue, see Kuenzel, supra.) We can conceive of no possible reason why these statements would have affected the trial court's imposition of the death sentence. No plain error exists here.
 XX
As required by § 13A-5-53, Code of Alabama 1975, we address the propriety of the appellant's conviction and the sentence of death. The appellant was indicted and convicted of capital murder as defined in § 13A-5-40(a)(2), Code of Alabama 1975, i.e., murder during the course of a robbery.
The record reflects that the appellant's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the trial court correctly found that the aggravating circumstances outweighed the mitigating circumstances. The trial court carefully reviewed the evidence presented in mitigation and found that no mitigating circumstances were present. The trial court found that the offense was committed while the appellant was under sentence of imprisonment for a previous offense, § 13A-5-49(1), Code of Alabama 1975, and that it was committed during the course of a robbery, § 13A-5-40(a)(2), Code of Alabama 1975. The court weighed the mitigating and the aggravating circumstances and sentenced him to death. We agree with the trial court's findings in the present case.
As required by § 13A-5-53(b)(2), Code of Alabama 1975, this court must independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's death sentence. After an independent weighing this court is convinced that the appellant's sentence of death is the appropriate sentence in the instant case.
As section 13A-5-53(b)(3), Code of Alabama 1975, provides, we must also address whether the appellant's sentence was disproportionate or excessive to the penalties imposed in similar cases. The appellant's sentence was neither. SeeKuenzel, supra; Henderson, supra; Bradley v. State,494 So.2d 750 (Ala.Cr.App. 1985), aff'd 494 So.2d 772 (Ala. 1986), cert. denied, *Page 1087 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). Two-thirds of all death sentences in Alabama are imposed for murders which occurred during the course of a robbery. See Dill; Kuenzel;Brownlee v. State, 545 So.2d 151 (Ala.Cr.App. 1988), aff'd,545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989).
Last, we have searched the entire record for any error which may have adversely affected the appellant's substantial rights and have found none. See Rule 45A, Ala.R.App.P.
The appellant received a fair trial. Therefore, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] We note that the appellant did file copies of news articles that appeared in local newspapers around the time of his arrest. However, these articles were filed in conjunction with his motion for a change of venue and not to support his claim of prejudicial pretrial publicity. In addition, the most recent of these articles was published more than a year before the date of the appellant's trial.
[2] We note that some federal courts have ruled that Miranda
warnings are not needed in the above situation. For a discussion of this see Kuenzel.