Roy C. Williams appealed from the second jury sentencing hearing, after remand, recommending that he be sentenced to death. The Court of Criminal Appeals affirmed the trial court's sentence of death. 571 So.2d 336 (1989). We affirm the Court of Criminal Appeals' judgment.
Roy C. Williams was originally convicted in the Circuit Court of Mobile County of capital murder and was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence in Williams v. State, 556 So.2d 737 (Ala.Cr.App. 1986). This Court affirmed, but remanded the case for a new jury sentencing hearing; see Ex Parte Williams, 556 So.2d 744
(Ala. 1988). After all the evidence was presented at the second sentencing hearing and the jury weighed the aggravating and mitigating circumstances, it returned a recommendation of death. Thereafter, the trial court conducted an independent examination of the aggravating and mitigating circumstances and accepted the jury's recommendation, sentencing Williams to death. The Court of Criminal Appeals reviewed the record, pursuant to Ala. Code 1975, § 13A-5-53, and finding no plain error, affirmed the sentence.
The only issue raised on the certiorari review is whether the trial court intruded into the voir dire process in such a manner as to unduly limit Williams's ability to rehabilitate the jurors challenged on the basis of their beliefs regarding the imposition of the death penalty. Witherspoon v. Illinois,391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
Williams argues that the trial court limited and cut off his rehabilitative questioning of "death qualified" jurors and that because of this he could not ascertain the depth of the prospective jurors' opposition to the death penalty. The alleged cut-off in questioning took place during the following exchange:
 "THE COURT: Thirty-six. Are you saying, sir, even though you haven't heard the first word, that there are not facts of evidence, that there are not facts and circumstances under which you could return a verdict recommending death by electrocution?
"JUROR: No.
 "PROSECUTION: That, again, would be regardless of the facts, whatever those facts might be, and regardless of the law, you could not under any circumstance, return a verdict of death by electrocution. Is that what you are saying, sir?
"JUROR: Yes.
 "PROSECUTION: Thank you Mr. Jordan. We would respectfully challenge Mr. Jordan.
 "DEFENSE: May I ask him a question before we challenge all these jurors? *Page 340 
"THE COURT: Sure. Ask him a question.
 "DEFENSE: Mr. Jordan, without trying to embarrass you in any way, are you saying if you are selected on a jury — you are going to take an oath to apply the law that the Court tells you is appropriate — are you telling the Court that you would ignore that oath in reaching your sentence?
 "THE COURT: That wasn't the question asked him. He's not going to ignore any oath. I don't think there's a juror in here that would do that. But to the specific question — and I'll let him restate it any way he wants to restate it — are there any facts and circumstances under which you, if you sat as a juror, could recommend to the Court death by electrocution? Yes or No?
"JUROR: No.
"THE COURT: Thank you.
"PROSECUTION: We would again renew —
"THE COURT: I granted it."
Williams relies on Witherspoon v. Illinois, 391 U.S. 510,88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), arguing that the trial judge's "intrusion" into this exchange limited Williams's ability to test the depth of the prospective juror's feelings on the death penalty. Witherspoon, however, clearly stands only for the proposition that the sentence of death cannot be carried out when jurors who have voiced only general objections to the death penalty are excluded. In the present case, each of the prospective jurors voiced more than general objections to the death penalty. The questions posed by the trial court very adequately inquired into the depth of the prospective jurors' objections to the death penalty. All prospective jurors questioned indicated that under no circumstances could they ever recommend the imposition of that sentence. See Crawford v.State, 377 So.2d 145 (Ala.Cr.App. 1979) (where prospective jurors' responses to trial court's questions indicated that they would not vote to impose the death penalty under any circumstances, even if facts justified it, there was no error in excluding them); Ex Parte Wright, 494 So.2d 745 (Ala. 1986);Ex Parte Dobard, 435 So.2d 1351 (Ala. 1983); Ex ParteBaldwin, 456 So.2d 129 (Ala. 1984).
Williams argues further that the trial judge's "intrusion" into the questioning also amounted to an abuse of discretion. We disagree. What Williams calls the trial judge's "intrusion" in no way limited Williams's ability to attempt to rehabilitate the prospective juror, but instead corrected a misstatement by defense counsel as to what that juror would do if selected. Defense counsel, in his question to that juror, went far beyond the relevant scope of questioning, namely, the juror's objections to the death penalty, into whether the juror would follow his oath. The trial judge was wholly correct and did not abuse the discretion afforded him in voir dire proceedings.
Last, Williams argues that the trial judge did not allow him, prior to the exchange quoted above involving prospective juror Jordan, any opportunity to rehabilitate other jurors on their objections to the death penalty before the prosecution's challenges were granted. The record, however, indicates that this was not the case. Other than a general continuing objection made at the commencement of the death qualification, defense counsel made no attempt to question the prospective jurors on their feelings until Mr. Jordan voiced his objections to the death penalty. At that time, defense counsel requested that he be allowed to ask a question, and the trial judge readily granted his request. This indicates to us that if defense counsel had requested to be allowed to ask questions of prior challenged jurors, that request too would have been granted. The record clearly shows that defense counsel chose not to question those jurors until Mr. Jordan spoke out. We see no error.
We have carefully examined Williams's arguments, as well as the entire record, and we find no instances of plain error. We must agree with the Court of Criminal Appeals that the appellant's sentence of death was proper. That court's judgment *Page 341 
affirming the sentence of death imposed by the circuit court is, therefore, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.