599 So.2d 1253 (1992)
Robert Leo CARROLL
v.
STATE.
CR 90-683.
Court of Criminal Appeals of Alabama.
April 17, 1992.
On Return to Remand June 12, 1992.
*1256 William S. Poole, Jr., Demopolis, for appellant.
James H. Evans, Atty. Gen., and Melissa G. Math and J. Randall McNeill, Asst. Attys. Gen., for appellee.
*1257 BOWEN, Judge.
Robert Leo Carroll, the appellant, was indicted and convicted for the capital offense defined in Ala.Code 1975, § 13A-5-40(a)(13). His crime involved the intentional murder of William Earl Sanders after having been convicted of murder in Ohio in 1972. The trial court accepted the recommendation of the jury and sentenced the appellant to death.

GUILT PHASE

I.
The appellant's challenge to the constitutionality of Ala.Code 1975, § 13A-5-40(a)(13), is without merit. In Hubbard v. State, 500 So.2d 1204, 1216 (Ala.Cr.App.), affirmed, 500 So.2d 1231 (Ala.1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987), this Court rejected a similar argument that the statute was arbitrary and capricious and does not properly narrow the class of persons eligible for the death penalty. See also Nelson v. State, 511 So.2d 225, 239 (Ala.Cr.App.1986), affirmed, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); Arthur v. State, 472 So.2d 650, 657-58 (Ala.Cr.App.1984), reversed on other grounds, 472 So.2d 665 (Ala.1985).

II.
Even where a timely request is made, where an indictment is returned prior to a preliminary hearing, the accused is no longer entitled to the preliminary hearing. Herriman v. State, 504 So.2d 353, 356-57 (Ala.Cr.App.1987), and cases cited therein. See also Rule 5.1(a)(4), A.R.Crim.P.

III.
The trial court properly denied the appellant's motion for a change of venue, which was based on alleged prejudicial pretrial publicity. Twenty-two members of the 54-member venire indicated that they had heard or read something about this case. Of those 22, all indicated that they could base their verdict on the evidence and none was excused for cause based on anything related to pretrial publicity. Only two newspapers articles, dated November 15 and 16, 1989, were introduced into evidence.
For the reasons stated in and applying the principles this Court collected in Kuenzel v. State, 577 So.2d 474, 483 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), we find that the motion for change of venue was properly denied.

IV.
The trial court allowed individual voir dire of each member of the venire who indicated that he or she had heard or read something about this case prior to trial. That voir dire was limited to the content of the publicity. However, "individualized voir dire on all questioning" was not allowed. Appellant's brief at 82.
Of the 54 members of the venire, 22 members indicated that they had heard or read something about the case. The trial court permitted each of those 22 members to be individually questioned to determine the extent of the member's knowledge. The trial court permitted the attorneys to conduct voir dire on any other matter in panels of 12 to 15 veniremembers. The appellant has simply failed to show that the trial court abused its discretion in this regard under the principles announced by this Court in Brown v. State, 571 So.2d 345, 349 (Ala.Cr.App.), cert. quashed, 571 So.2d 353 (Ala.1990), judgment vacated and cause remanded for reconsideration, ___ U.S. ___, 111 S.Ct. 2791, 115 L.Ed.2d 966, judgment retained, 586 So.2d 991 (Ala.Cr. App.1991). See Parker v. State, 587 So.2d 1072, 1078 (Ala.Cr.App.1991).

V.
The trial court properly denied the appellant's challenge to 21[1] veniremembers who indicated that they had heard or read about the crime, where each member indicated *1258 that he or she could lay aside any impressions gained from the media publicity and could render a verdict based solely on the evidence presented at trial. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961). See also Jackson v. State, 516 So.2d 726, 739 (Ala.Cr.App.1985), remanded on other grounds, 516 So.2d 768 (Ala.1986).

VI.
The appellant argues, for the first time on appeal, that six members of the venire were improperly excused based on their opposition to the death penalty. The standard for determining whether a prospective juror is disqualified from serving in a death penalty case is whether the prospective juror's views would "`prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.'" Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). Here, the responses of the six venire members clearly indicated that their performance would be impaired. Ex parte Williams, 571 So.2d 338, 340 (Ala.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2067, 114 L.Ed.2d 471 (1991).

VII.
The trial court properly overruled the appellant's motion to strike venire member Doris Lyon on the ground of her "emphatic support" for the death penalty. Appellant's brief at 85. Although Ms. Lyon initially indicated that she believed that the death penalty should automatically be imposed if a convicted murderer was convicted of a second murder, her subsequent responses indicate that she would not automatically impose the death penalty and that her decision would be based on the law and the evidence. The standard in Witt, "does not require that a juror's bias be proved with `unmistakable clarity.'" Witt, 469 U.S. at 424, 105 S.Ct. at 852. See Pierce v. State, 576 So.2d 236, 245-46 (Ala. Cr.App.1990), cert. denied, 576 So.2d 258 (Ala.1991).

VIII.
Under Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), and Ex parte Bird and Warner, 594 So.2d 676 (Ala.1991), this white appellant had standing to challenge the prosecution's removal of black members of the jury venire. However, application of the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987), reveal no racial discrimination by the prosecution in the use of its peremptory strikes. See also Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
Of the 54 persons on the venire, 36 were black. The State used seven of its 17 strikes against blacks. The appellant used 12 of his 16 strikes against blacks. The jury that tried the appellant was composed only of blacks. The prosecution's reasons for striking those seven blacks were race neutral: opposition to the death penalty; expressed reservations about judging another; belief that law enforcement did not treat all people fairly; "potential involvement in some criminal activities"; familiarity with a potential witness; sister of a convicted felon, which also indicated untruthfulness in the juror questionnaire responses; and sister of a veniremember already challenged. The record shows that the prosecutor struck blacks and whites for the same reasons.
This case is governed by the principles stated in Harrell v. State, 571 So.2d 1270, 1271 (Ala.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991):
"[A] defendant cannot prove a prima facie case of purposeful discrimination solely from the fact that the prosecutor struck one or more blacks from his jury. *1259 A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, Harrell [v. State], 555 So.2d [263, 267 (Ala.1989)], citing United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), then it should also be available to show the absence of a discriminatory purpose."

IX.
The appellant contends that the trial court committed error in not suppressing the testimony of Robert Cook, William Whitehead, Daryl Johnson, Melvin Stephens, and Edd Billingsley.[2] The appellant contends that this testimony should have been suppressed because it was the "fruit" of an illegal confession.
The evidence shows that on November 9, 1989, the appellant was an inmate in the Sumter County jail. In his findings in sentencing the appellant to death, the trial court found:
"While the Defendant was an inmate in the county jail in Sumter County, Alabama and awaiting transportation to the state penitentiary, he became involved in an altercation with William Earl Sanders [another inmate]. The altercation began when the deceased and another individual while playing kickball in the exercise yard allowed a ball to strike a cup of ice that the Defendant had placed on a concrete support. An argument ensued between the Defendant and the deceased. The Defendant exited the exercise yard and went upstairs to his cell and obtained a sharp instrument that was concealed near his jail cell. This instrument was a sharpened wire from a piece of broom that had been rubbed on the floor or some other place to make it extremely sharp. The Defendant returned to the exercise yard and stabbed the deceased in the heart with the sharpened instrument. The evidence was that the deceased had no weapon, and he attempted to evade the Defendant who stabbed him in the heart. The deceased died immediately in the exercise yard." R. C-131-132.
Shortly after the stabbing, the prisoners were locked in their cells. The appellant's person and cell were searched, and apparently, nothing was discovered. Then, before the appellant was questioned by anyone, Sumter County jailer Robert Cook found two sharpened pieces of wire in the "pipe room" located directly behind the appellant's cell. The testimony indicates that those pieces of wire were accessible from the appellant's cell through a "window" or hole in the wall.
Jailer Cook gave the wires to Sumter County Sheriff Melvin Stephens who gave the wires to district attorney's Investigator Edd Billingsley. Both Stephens and Billingsley were present when Cook discovered the wires.
After the wires had been discovered, Investigator Billingsley interrogated the appellant, after advising him of his constitutional rights and obtaining a written waiver. Sheriff Stephens and Jailer Cook were present. The appellant's tape-recorded statement was suppressed because, although the appellant stated on two occasions at the very beginning of the interview, "I'm not going to waive my rights," (R. 189), the investigator continued to inquire *1260 whether the appellant was "willing to talk," and did obtain the appellant's signature on a waiver of rights form. R. 186. The trial judge held: "[I]f someone says, `I'm not going to waive my rights,' say[s] that twice, I think then you don't have a right to go further." R. 224[3]. An oral statement made by the appellant immediately after the conclusion of the tape-recorded statement was also suppressed because it was merely a "continuation" of the former statement. R. 239.
The appellant contends that the testimony of Jailer Cook, Investigator Billingsley, and Sheriff Stephens was tainted because these individuals were present during the illegal interrogation of the appellant. He argues that the testimony of the witnesses whom Billingsley and Stephens interviewed, inmates William Whitehead and Daryl Johnson, was tainted by the information that the officers learned during the appellant's statements. Cook and Johnson actually witnessed the appellant stab the victim. Cook, Johnson, and Whitehead testified only about what they had actually witnessed immediately before, during, and after the stabbing. Billingsley and Stephens did not testify as to any information they had acquired from the appellant.
The trial court denied the appellant's numerous objections, finding, on one occasion, that "[a]n eye witness can tell what they saw no matter whether it was an improper statement or improper arrest or improper anything.... The fact that [the eye witnesses] may have been questioned by someone who took the statement does not mean that they cannot testify to what they saw." R. 248, 250. Although we reject the appellant's arguments, we do not accept the trial court's reason for admitting the testimony as an accurate statement of the legal principles involved. See 4 W. LaFave, Search and Seizure § 11.4(h) and (i) (2d ed. 1987); 2 W. Ringel, Searches and Seizures; Arrests and Confessions § 30.3 (1991). The case of Holt v. State, 372 So.2d 375 (Ala. Cr.App.), cert. denied, 372 So.2d 377 (Ala. 1979), cited by the appellee, should be read and applied with caution.
We do reject the appellant's argument that the confession, which was taken in violation of the appellant's constitutional rights, tainted the subsequent testimony of those officers who were present during that confession and the testimony of anyone interviewed by the law enforcement officers following that confession. Here, there was no "fruit" of the forbidden tree; there was no "exploitation" of any illegality. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); Hornsby v. State, 517 So.2d 631, 637-638 (Ala.Cr.App.), cert. denied, 517 So.2d 639 (Ala.1987), cert. denied, 485 U.S. 961, 108 S.Ct. 1224, 99 L.Ed.2d 425 (1988). There was no showing that Sheriff Stephens and Investigator Billingsley learned the identity of any witness or the existence or location of any evidence introduced at trial through the appellant's confession, or that they used any information obtained from the appellant to obtain a statement from any other witness.
In the confession, the appellant did claim that he got the wire from a broom. Supplement C-516. However, at the appellant's trial, no testimony about the broom was ever presented for the consideration of the jury.

X.
In connection with the prior argument, the appellant also contends that the trial court committed error in denying his motion for a mistrial and his motion to exclude the testimony of Investigator Billingsley because the investigator was present in the courtroom during the testimony of the State's first witness. "The purpose of the witness sequestration rule is to prevent any one witness from hearing the testimony of other witnesses and perhaps perceiving the value of his own testimony *1261 to one party or the other." Ex parte Faircloth, 471 So.2d 493, 496 (Ala.1985). See J. Hubbard, The Rule on Exclusion of Witness Beyond the Courtroom, 53 Ala. Law. 126 (1992). "Alabama appellate courts have time and again refused to hold it an abuse of discretion on the part of a trial court to allow a sheriff, police chief, or similarly situated person who will later testify to remain in the courtroom during trial." Ex parte Lawhorn, 581 So.2d 1179, 1181 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 445, 116 L.E.2d 463 (1991). See also Chesson v. State, 435 So.2d 177, 178-79 (Ala.Cr.App.1983).
The trial judge stated that Billingsley has "been testifying and been present in court for at least fifteen years and has never been excluded by the Rule since I've been trying cases." (R. 282) However, after the appellant's objection, even though it was not clear that the rule had previously been invoked, the trial court ordered the investigator to remain outside the courtroom for the remainder of the trial.
"In an abundance of caution I am going to ask that he remain outside the courtroom for the rest of the trial. However, I am by no means finding that he has violated any rights of the defendant in this case. He has always been exempt from the Rule. This is nothing out of the ordinary that's happened in this case. However, in the abundance of caution because this is a capital case, I am going to ask that he remain outside the courtroom for the rest of the trial." R. 285-86.
We find no abuse of the discretion of the trial court. C. Gamble, McElroy's Alabama Evidence § 286.01 (4th ed. 1991).

XI.
Three of the appellant's arguments involve the contention that the prosecution failed to prove that the appellant had a prior guilty plea conviction for murder and that that prior conviction had occurred within the 20 years preceding the present offense. The appellant argues that the prosecution proved only when the appellant had been sentenced and not when he had been "convicted" of the prior offense. The appellant argues that in order to prove a prior guilty plea conviction within the preceding 20 years pursuant to the capital statute under which the appellant was charged, the prosecution must show when the guilty plea was accepted by the trial court. This issue involves the interpretation of the term "conviction" and is one of first impression in Alabama.
On November 9, 1989, the appellant stabbed and killed an inmate of the Sumter County jail. For that crime, the appellant was convicted of the capital offense defined as follows in Ala.Code 1975, § 13A-5-40(a)(13):
"Murder by a defendant who has been convicted of any other murder in the 20 years preceding the crime; provided that the murder which constitutes the capital crime shall be murder as defined in subsection (b) of this section; and provided further that the prior murder conviction referred to shall include murder in any degree as defined at the time and place of the prior conviction."
The indictment charged that the appellant was convicted of murder in the State of Ohio on June 28, 1972. In order to qualify as a conviction within the 20 years preceding the Alabama murder, the Ohio murder conviction must have occurred on or after November 9, 1969.
The only evidence introduced in the guilt stage of the appellant's trial to prove that he had a prior murder conviction was a properly authenticated document from the Common Pleas Court of Montgomery County, Ohio. The significant portion of that document, which is styled "ENTRY," is as follows:
"On this 28th day of June, 1972 the defendant herein, Robert Leo Carroll, appeared in open Court with his counsel of record and it appearing to this Court that the defendant having previously entered a plea of guilty to the reduced and included offense of Murder Second Degree, which plea was accepted by the Court; and it further appearing that the defendant had been committed to the Lima State Hospital at Lima, Ohio and that a written report concerning his mental *1262 status having been received by this Court under date of March 22, 1972 wherein in a subsequent hearing which was held on April 12, 1972 this Court did, after hearing evidence, find the defendant to be sane and competent to stand trial; and it further appearing that the defendant was subsequently examined by Dr. D.A. Thomas, a physician specializing in mental diseases, who did file a written report of his examinations and evaluations to this Court; and further this Court did order the matter of sentencing of this defendant to be continued until the 28th day of June, 1972 so that evidence may be received in open Court from Dr. D.A. Thomas, and the said doctor having testified and on the evidence this Court does find that the defendant is a psychopathic offender.
"And the Court did then inquire of the defendant if he had anything to say why judgment and sentence should not now be pronounced against him, and the Court finding no further cause why said sentence should not now be pronounced, it is therefore ordered on this 28th day of June, 1972 that the defendant be and is hereby sentenced to the Ohio State Penitentiary for Life, ...
"The execution of said sentence is hereby suspended and the Court does hereby order an indefinite commitment of the defendant to the Department of Mental Hygiene and Correction at its State facility, the Lima State Hospital at Lima, Ohio ... until he has recovered or his condition appears to have improved to such an extent that he no longer needs the special custody, care or treatment of such institution, ..." R. C-531. (Emphasis added.)
A postscript to this order notes: "The Defendant has been in custody since March 21, 1970. It is suggested that the Adult Parole Authority consider this time of incarceration in determining the time for any possible parole hearing." R. C-532
The appellant argues that this document is merely a "sentencing order" and that the date of his actual "conviction" was never proven during the guilt phase of the trial.
At the sentence phase before the judge, the State introduced into evidence an "Adult Parole Authority Investigator's Report." R. C-558-67. That report shows that the prior murder was committed on March 21, 1970, in Dayton, Ohio. The appellant was indicted for first degree murder on May 27, 1970. On September 15, 1970, a three-judge panel found the appellant to be legally insane and ordered him committed to a state mental hospital until restored to reason. On April 12, 1972, a court declared the appellant competent to stand trial. On June 26, 1972, the appellant withdrew his plea of not guilty by reason of insanity and pleaded guilty to second degree murder as a lesser included offense. The appellant was sentenced to life imprisonment on June 28, 1972. However, on that same day his sentence was suspended and the appellant was committed to a state mental hospital. The appellant was transferred to a penal institution on July 22, 1974. At no time has there been any dispute as to these facts.
We agree that the prosecution never proved the exact date upon which the appellant pleaded and was adjudicated guilty. However, we do not find that error fatal to the appellant's conviction of the charged capital offense.
The meaning of the term "`conviction' varies according to the context in which it appears and the purpose to which it relates." 24 C.J.S. Criminal Law § 1458, at 2 n. 25 (1989). See also 9A Words and Phrases 270 (1960) and 58 (Supp.1991).
"The word `conviction' is of equivocal meaning, and its use and meaning may vary depending on the particular circumstances.
"`Conviction' usually means the determination of accused's guilt according to some known legal mode, as by a guilty plea or by a verdict or finding of guilt, prior to and independently of judgment or sentence, and is distinguished from judgment or sentence.
"In the restricted or technical legal sense in which it is sometimes used, `conviction' means the final consummation of the prosecution against accused including *1263 the judgment or sentence rendered pursuant to a verdict, confession, or plea of guilty. Frequently the term is used to denote the judgment or sentence itself, or to signify both the ascertaining of the guilt of accused and judgment thereon by the court. A judgment or sentence is indispensable to a conviction in this sense of the term, and the mere ascertainment of guilt by verdict or plea, which satisfies the ordinary legal definition of conviction, does not suffice.
"In construing the term `conviction,' it has been held that the technical meaning should not be attributed to it, unless there is something in the context to indicate that it was used in such sense. It has been held, however, that unless the context in which the word is used indicates otherwise, `conviction' is a final judgment and sentence rendered by the court pursuant to a verdict or plea of guilty; thus, a person is not `convicted' of an offense until the court enters the judgment."
24 C.J.S. Criminal Law § 1458(b) (1989) (footnotes omitted).
"Although there is some authority to the contrary, the weight of authority is to the effect that the word `conviction' as used in statutes providing for increased punishment for persons formerly convicted of crime necessitates the pronouncement of sentence upon the verdict or plea of guilty in order to obtain a judgment that is final, so far as the trial court is concerned."
R. Davis, Annotation, What Constitutes Former Conviction Within Statute Enhancing Penalty for Second or Subsequent Offense, 5 A.L.R.2d 1080, § 16 (1949).
The term "conviction" is not defined by the present death penalty statute or any of its predecessors. In attempting to determine the legislative intent behind the use of the term "conviction," we review the history of Alabama's present death penalty law. "[I]n determining legislative intent, courts may look to the history of the statute and the purpose sought to be accomplished." Bowlin Horn v. Citizens Hospital, 425 So.2d 1065, 1070 (Ala.1983). The definition of this particular capital offense first appeared in Alabama's "original" post-Furman death penalty act, which defined as a capital offense "[a]ny murder committed by a defendant who has been convicted of murder in the first or second degree in the 20 years preceding the crime." Ala.Code 1975, § 13-11-2 (Act No. 213, 1975, Ala.Acts 701 § 2), which was carried over intact to the New Criminal Code as § 13A-5-31. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). For the significance of that decision, see E. Carnes, Alabama's 1981 Capital Punishment Statute, 42 Ala. Law. 456, 457 (1981); J. Colquitt, The Death Penalty Laws of Alabama, 33 Ala. L.Rev. 213, 215-16 (1982). The 1975 death penalty act was repealed by the 1981 death penalty act, effective July 1, 1981. See Ex parte Daniels, 534 So.2d 656, 656 n. 1 (Ala.1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987). The word "conviction" has not been defined in any Alabama death penalty act.
In Hubbard v. State, 382 So.2d 577, 589-90 (Ala.Cr.App.1979), affirmed, 382 So.2d 597 (Ala.1980), reversed on other grounds, 405 So.2d 695 (Ala.1981), this Court noted the "total absence of legislative history" with regard to the 1975 death penalty act and held:
"[I]t is impossible to determine what actually motivated enactment of the twenty year period. Hence we are forced to identify the purpose that the statute in fact serves, and presume a legislative intent to serve that purpose.
"The statute was obviously enacted with a view to the protection of society from a certain class of criminal with the belief that a hardened criminal needed more severe punishment than a first offender....
". . . .
"We do not think it unreasonable to suggest that the legislature, faced with enacting the death penalty laws for this state, reasoned that it is not every prior conviction for murder which upon a subsequent conviction should be subject to the death penalty but only those which *1264 occur within a limited period of time. Indeed it could be argued that the very act of instituting the twenty year period was an affirmative and reasoned approach rather than merely including any prior conviction. Considering society's right to be protected from the depravity of the criminally inclined and the duty of the government to secure to its citizens the enjoyment of their lives and property against the unlawful aggression of the criminal class, we conclude that the classification is not unreasonable or arbitrary. Merely because the legislature could have created a different classification does not make the present one arbitrary."
The term "conviction" has not been construed by any Alabama appellate court in connection with the death penalty. The term is not defined in the Alabama Rules of Criminal Procedure. Although the terms "judgment,"[4] "sentence,"[5] and "determination of guilt"[6] are defined in Rule 26.1(a)(1), (2), and (3), A.R.Crim.P. (effective January 1, 1991), respectively, no definition has been provided for the term "conviction."[7]
"Where, as here, this Court is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985). "[T]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.... In construing the statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible.... We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute." Pace v. Armstrong World Industries, Inc., 578 So.2d 281, 283 (Ala.1991). "If possible, the intent of the legislature should be gathered from the language of the statute itself. However, if the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that will flow from giving the language in question one particular meaning rather than another." Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991).
"[A]mbiguous criminal statutes must be narrowly interpreted, in favor of the accused." United States v. Herring, 933 F.2d 932, 937 (11th Cir.1991). "[I]t is well established that criminal statutes should not be `extended by construction.'" Ex parte Evers, 434 So.2d 813, 817 (Ala.1983). "`[C]riminal statutes must be strictly construed, to avoid ensnaring behavior that is not clearly proscribed.'" United States v. Bridges, 493 F.2d 918, 922 (5th Cir.1974).

"In United States v. Boston & M. RR Co., 380 U.S. 157, 85 S.Ct. 868, 870, 13 L.Ed.2d 728 (1965), the Supreme Court stated:
"`A criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from United States v. Wiltberger, 5 Wheat. 76, 5 L.Ed. 37, [(1820)], down to this day. Chief Justice Marshall said in that case:
"`"The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and *1265 on the plain principle that the power of punishment is vested in the legislative, not in the judicial department." Id., p. 95.
"`The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. United States v. Weitzel, 246 U.S. 533, 38 S.Ct. 381, 62 L.Ed. 872 [(1918)].'
"Moreover, `one "is not to be subjected to a penalty unless the words of the statute plainly impose it," Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 [(1905)]. "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221-222, 73 S.Ct. 227, 229-230, 97 L.Ed. 260 [(1952)].' United States v. Campos-Serrano, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971)."
Bridges, 493 F.2d at 923.
"Words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning." Alabama Farm Bureau Mut. Casualty Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984). The general rule of construction for the provisions of the Alabama Criminal Code is found in Ala.Code 1975, § 13A-1-6: "All provisions of this title shall be construed according to the fair import of their terms to promote justice and to effect the objects of the law, including the purposes stated in section 13A-1-3." Among the purposes stated in § 13A-1-4 is that found in subsection (2): "To give fair warning of the nature of the conduct proscribed."
Because the term "conviction" has not been defined by the legislature in the criminal code or by the Supreme Court of Alabama in the Rules of Criminal Procedure, we look to the case law of this State to find the meaning of that term. However, it must be noted that we have found and have been cited to no case law in this State in which the distinction between "conviction" and "sentence" was at issue or in which that distinction was specifically addressed.
In Ex parte Alabama State Bar, 285 Ala. 191, 193, 230 So.2d 519, 521 (1970), the Alabama Supreme Court was "called upon to decide the legal meaning of the word `conviction' as it [wa]s used in [a] disbarment proceeding" under the rule requiring the disbarment of an attorney "[u]pon his being convicted" of a felony. In that case, the attorney had been convicted of a felony in federal court, and he appealed his conviction. He maintained that he could not be disbarred until his appeal was decided. The attorney argued that "the word `convicted' as used in this disbarment proceeding means a conviction or an adjudication of guilt, after all legal avenues of appeal have been exhausted." Ex parte Alabama State Bar, 285 Ala. at 193, 230 So.2d at 520. The Supreme Court rejected that contention and held that an appeal from a criminal conviction is no ground for delay or postponement of disbarment, and that for purposes of disbarment, the conviction remained even though an appeal of that conviction was pending.
"The courts have given the word conviction many different legal meanings, depending on the situations in which it is used. Conviction has no fixed and inflexible meaning. As applied to criminal offenses, it is used in various senses. [Citations omitted.]
"In Commonwealth v. Lockwood, 109 Mass. 323, 325, [1872] it is said:
"`The ordinary legal meaning of "conviction," when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while "judgment" or "sentence" is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained. * * *'

*1266 "So in this case, we must consider the use of the word `conviction' in the light of the plain, clear language of Rule 37(b) [of the Rules Governing the Conduct of Attorneys in Alabama], the context in which the word is used, the purposes the rule is intended to accomplish, and the weight of authority construing its meaning in analogous situations.
". . . .
"Whatever may be the meaning attributed to the word `conviction' with respect to its use in other situations different from the present one, it seems to us that the meaning applied in the cases cited herein, is not only the weight of authority, but also is the better reasoning. We therefore hold that under Rule 37(b), the jury verdict finding the defendant guilty and the judgment of conviction entered thereon by the United States District Court for the Northern District of Alabama constitutes a conviction under our court rule making it mandatory for this court to order the respondent disbarred and excluded from the practice of law."
Ex parte Alabama State Bar, 285 Ala. 193-94, 197, 230 So.2d at 521, 525. See also Evers v. Medical Licensure Commission of Alabama, 421 So.2d 89, 91 (Ala. 1982) (as used in the statute providing for revocation or suspension of a physician's license upon conviction of a felony, "a jury verdict finding a defendant guilty and the judgment of conviction entered thereon constitute a `conviction'").
In connection with the Alabama Habitual Felony Offender Act, a conviction means an adjudication of guilt. This Court has held, "in firm adherence to Watson v. State, [392 So.2d 1274 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981)], and Burgess v. State, [412 So.2d 298 (Ala. Cr.App.1982) ], that a previous `adjudication' of guilt of a felony constitutes a previous `conviction' of a felony whenever the term `previous conviction' of a felony, or its equivalent, is used in the Habitual Felony Offenders law of Alabama." Summerhill v. State, 436 So.2d 2, 5 (Ala.Cr.App.1983). A document "denominated `Sentence of Court' is not a judgment entry, ... and does not affirmatively show that the defendant was represented by an attorney or waived this right. Therefore, it cannot be used to enhance punishment under the habitual offender act." Pickett v. State, 456 So.2d 330, 338 (Ala.Cr.App.1982).
In Loftin v. City of Montgomery, 480 So.2d 606, 607 (Ala.Cr.App.1985), this Court held that for purposes of enhanced punishment for a subsequent D.U.I. conviction, the date of the conviction rather than the date of the offense controls. In that case, this Court appears to indicate that a "conviction" refers to a "finding of guilt."
We hold that the term "conviction" as used in Ala.Code 1975, § 13A-5-40(a)(13), means that there must have been a prior "judgment" and "sentence" and "determination of guilt" as those terms are defined by Rule 26.1(a)(1), (2), and (3), A.R.Crim.P. We reach that conclusion mindful of the requirement that criminal statutes must be construed so as to give fair warning of the nature of the conduct proscribed and not broadened by judicial interpretation, aware of the interpretation given the term "conviction" by the weight of authority, and recognizing that the apparent intent and purpose of § 13A-5-40(a)(13) is to attempt to protect society from that criminal who has been convicted of a prior murder within a limited period of time.
We note that an argument can be made that under Ohio law a plea of guilty is not synonymous with a conviction, and that to constitute a prior conviction, a judgment of conviction (consisting of the plea, the findings of the court, and sentencing) is necessary. State v. Henderson, 58 Ohio St.2d 171, 12 O.O.3d 177, 389 N.E.2d 494 (1979).
In this case, the document of the Common Pleas Court of Montgomery County, Ohio, constitutes a judgment entry and is sufficient to prove the appellant's prior conviction as we have just defined that term. Although that proof is sufficient, it is based, at least in part, on circumstantial, and not direct, evidence. However, we find it adequate. Circumstantial evidence is not inferior to direct evidence. Linzy v. State, 455 So.2d 260, 262 (Ala.Cr.App.1984).
*1267 That document shows that the appellant had been in custody for some offense since March 21, 1970; that he had been committed to a state mental hospital; and that the appellant was declared competent to stand trial on April 12, 1972. The appellant's plea of guilty and its acceptance by the court (the "determination of guilt" as defined by Rule 26.1(a)(3)) must have occurred after the date he was declared competent and the date judgment and sentence were pronounced, which was June 28, 1972. Thus, it is obvious that the appellant's determination of guilt, judgment, and sentence were imposed after November 9, 1969, and was therefore, well within the 20-year period.

XII.
The appellant contends that his motion for a judgment of acquittal should have been granted. We addressed several grounds of this argument in Part XI of this opinion. However, the appellant also argues that the State failed to prove that the killing was intentional and that the "evidence shows a killing after a provocation [consisting of a homosexual rape threat] of a mentally ill individual in a stressful jail situation." Appellant's brief at 88. These contentions are totally without merit and are so spurious as to warrant no citation of authority.
We will not give a detailed recital of the evidence presented by the State at the guilt phase of the trial. Basically, that evidence shows that, while in the exercise yard of the county jail, inmate Daryl Johnson kicked a ball, which accidentally struck the appellant's cup of ice, spilling the ice on the ground. The appellant accused the victim, William "Sunshine" Sanders of the act. An argument ensued and Sanders said, "Fuck you" to the appellant. The appellant left the yard, returned to his cell, and retrieved a sharpened piece of wire, which he had secreted. Concealing the weapon on his person, the appellant returned to the yard, produced the weapon, told Sanders, "I'll show you what an accident is," pursued Sanders a short distance as Sanders retreated, and stabbed him in the chest. At the guilt phase of the trial, there was no evidence of any homosexual threat, only evidence of a deliberate, premeditated, cold-blooded, and intentional murder committed by an inmate who had had a prior conviction for murder within the past 20 years.

XIII.
We reject the appellant's contentions that comments by the prosecutor during his guilt stage argument constitute reversible error.
We reject the appellant's characterization of the prosecutor's comment, "It almost takes my breath away to believe they can make you believe they really believe what they are telling you," (R. 413) as an improper attack on defense counsel. See Whitlow v. State, 509 So.2d 252, 257 (Ala.Cr.App.1987). Considering the comment in context, it amounts to nothing more than a comment on the "specious argument" (R. 414) of defense counsel that this killing was reckless and not intentional. See United States v. Willis, 759 F.2d 1486, 1502 (11th Cir.), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).
In closing, the district attorney argued:
"Now, I want to talk to you just a few minutes about that. We all know, we watch television, we've been to court, you've heard the Judge, and you've seen what we've done here today. We all know that everybody in these United States has a right to a fair trial. And you know good and well if you watched us that that man sitting there has had a fair trial, tediously, drawn out. It's a short case. But everything the State presented was looked at through a microscope. This man had every advantage. But now let's think about the trial Sunshine had. This man tried Sunshine and executed him in a period of probably three minutes. He had no opportunity to do anything. He didn't have a lawyer to represent him. He didn't even have a place to go because he was locked up. He couldn't even run. Can you imagine that? He couldn't have a weapon to defend himself with because he's just a *1268 regular guy locked up. This guy, this experienced man over here, he's got him a weapon. You can bet he's going to always have a weapon. No matter where he goes, he's going to have a weapon.
"When you really think about this case, compare those two guys. Here's Sunshine with thirteen more days to do in jail, and here's this man who's already murdered somebody. Think about all the advantages this guy has had.
". . . .
"Think of all the advantages this man sitting right here has had before you. This jury was selected very carefully. The evidence came in very carefully.....
". . . .
"And the judge has ruled on all these objections and made sure this man had all of the advantages. Then let's think about this other little guy [the victim] locked up over there in the jail, no place to go. And according to Mr. Poole [defense counsel], the only reason he did this is because he wanted to make him leave him alone." R. 420-22.
"It is improper to urge that a criminal defendant's exercise of constitutional rights is a ground for discrediting his defense. See, e.g., Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).... Similarly, it is wrong to imply that the system coddles criminals by providing them with more procedural protections than their victims." Brooks v. Kemp, 762 F.2d 1383, 1411 (11th Cir.1985), vacated on other grounds, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986). See also Bruno v. Rushen, 721 F.2d 1193, 1194-95 (9th Cir.1983), cert. denied, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984); Arthur v. State, 575 So.2d 1165, 1185-86 (Ala.Cr.App. 1990), cert. denied, 575 So.2d 1191 (Ala. 1991).
Initially, we note that the prosecutor's argument may be construed as "an attempt to illustrate for the jury the defendant's total disregard of the rights of the victim, rather than an attempt to discredit" the appellant for the exercise of his constitutional rights. Kirkpatrick v. Blackburn, 777 F.2d 272, 284 (5th Cir.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).
However, even if we were to construe the prosecutor's argument as improper, we would not consider it so prejudicial as to warrant a reversal of the appellant's conviction. "Counsel should be given wide latitude in arguing to the jury; and only where the defendant is prejudiced by the state's argument is reversal mandated." Bayne v. State, 375 So.2d 1237, 1238 (Ala. 1978). "If it can be said with fair assurance `that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand.' Stain [v. State, 273 Ala. 262, 266, 138 So.2d 703, 706 (1961) ]." Ex parte Wilhite, 485 So.2d 787, 788 (Ala.1986). "In order to constitute reversible error, improper argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury.... Prosecutorial statements which are merely trivial and non-prejudicial are not grounds for error." Mitchell v. State, 480 So.2d 1254, 1257-58 (Ala.Cr.App.1985). "There is no legal standard by which the prejudicial qualities of improper remarks of a solicitor in the trial of a case can be gauged. Each case must be determined on its own merits." Smith v. State, 282 Ala. 268, 291, 210 So.2d 826, 848 (1968). "Prosecutorial misconduct is a basis for reversing an appellant's conviction only if, in the context of the entire trial and in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused." United States v. Reed, 887 F.2d 1398, 1402 (11th Cir.1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990).
We recognize that "[o]verwhelming evidence of guilt does not render prejudicial *1269 error harmless under Rule 45, Ala.R.App. P." Ex parte Lowe, 514 So.2d 1049, 1050 (Ala.1987). However, "[w]hen the evidence of the defendant's guilt is strong, the defendant must show that the trial court's error was prejudicial." Ex parte Harris, 428 So.2d 124, 125 (Ala.1983). Here, the evidence of the appellant's guilt was based principally on the undisputed testimony of two eyewitnesses and was overwhelming. We conclude that, within the context of this trial, the prosecutor's comment did not prejudice the appellant.
The prosecutor's argument, "I have tried several capital cases. To me this is the worst," (R. 424) was improper because it constituted a comment that was not based on the evidence and because it injected the personal knowledge and opinion of the prosecutor into this case. Johnson v. State, 246 Ala. 630, 22 So.2d 105 (1945). However, no error occurred because the trial judge sustained defense counsel's objection and promptly instructed the jury that the remark was improper and that it was not to be considered. R. 424. See Ex parte Brooks, 562 So.2d 604, 605 (Ala.1990).
As required, we have considered the various statements of the prosecutor "to determine whether or not, in their cumulative effect, they created a prejudicial atmosphere." Blue v. State, 246 Ala. 73, 79, 19 So.2d 11, 16 (1944). We conclude that the cumulative effect of the prosecutor's argument did not deny the appellant a fair trial. Furthermore, we have reviewed the record and have found no plain error in the prosecutor's argument in the guilt phase of the trial.

XIV.
The trial court did not overemphasize the capital charge in its instruction to the jury during the guilt phase of the trial. The appellant's objection "that there was undue and prejudicial emphasis on the capital portion of the charges" (R. 441) is vague and virtually meaningless, and has not been explained either at trial or on appeal. We have reviewed the oral charge and have found no plain error.

SENTENCE PHASE

XV.
The appellant argues that error occurred when, during the sentence phase of the trial before the jury, the prosecution was permitted to use a letter report of mental health worker Martha Dunn in framing a hypothetical question to Dr. Koch, the appellant's expert psychologist. He argues that the hypothetical question was "surprising, improper, unfounded, erroneous and prejudicial." Appellant's brief at 68. Even if we assume for purposes of this argument that the question was subject to these criticisms, we would still find no error.
Although we oversimplify the matter, Ms. Dunn's report indicated that approximately six months[8] before the homicide, the appellant did not exhibit any indication of any mental or emotional disturbance. The prosecutor, on cross-examination of Dr. Koch, in a hypothetical question, asked whether that information would have any significance. Dr. Koch responded, "I don't feel it would tell me anything" because, in his opinion, that report contained insufficient data. R. 494-95. Ms. Dunn did not testify and her report was never introduced into evidence.
We find that any error in the question was cured by the answer. Aaron v. State, 271 Ala. 70, 83, 122 So.2d 360, 372 (1960); Caldwell v. State, 203 Ala. 412, 417, 84 So. 272, 276 (1919). "If there was any error in allowing the question, it was error without injury, as the answer was not unfavorable to [the] defendant." Braham v. State, 143 Ala. 28, 45, 38 So. 919, 925 (1905). "A negative answer to an improper question does not constitute reversible error." *1270 Reeves v. State, 456 So.2d 1156, 1161 (Ala. Cr.App.1984).

XVI.
We also reject the appellant's argument that the prosecutor's arguments in the sentence phase of the trial were improper and warrant a reversal of his conviction.
In his argument in the penalty phase, the prosecutor stated that "this man has had all the consideration anybody can get. How many people does he get to kill?" R. 512. We consider the first sentence of that comment as nothing more than a response to defense counsel's argument that he had done everything he "honorably" could in representing the appellant. (R. 505-06.) Although we do not approve of the second sentence quoted above, we do not consider it to constitute reversible error. That sentence can be interpreted as merely an argument for law enforcement and society's right of self-protection, Kuenzel v. State, 577 So.2d 474, 503-04 (Ala.Cr. App.), affirmed, 577 So.2d 531 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), rather than an improper comment on the possibility that the appellant will commit future illegal acts, Ex parte Smith, 581 So.2d 531, 533 (Ala.1991).
The appellant contends that the prosecutor's argument that "most of the psychologists and psychiatrists wouldn't agree with" (R. 514) the testimony of the expert for the appellant that schizophrenia is a "bio-chemical reaction in the brain" (R. 514) was improper because it was not based on the evidence. At the sentence phase of the trial, Dr. Koch testified that the appellant suffered from residual schizophrenia, which he described as a bio-chemical disorder of the brain. Although Dr. Koch testified that he did not believe that there was any dispute and that "everybody believe[s] that [schizophrenia] is a bio-chemical reaction," he also stated that he could not state that every psychiatrist and psychologist agreed with that theory but that "the predominant position in science today is clearly [that] schizophrenia is a genetic link disorder. It's an inherited disorder, and it's a bio-chemical disturbance in the brain." R. 488-489. "It has long been the rule in Alabama that, although counsel should be given considerable latitude in drawing reasonable inferences from the evidence, they may not argue as a fact that which is not supported by the evidence." Ex parte Washington, 507 So.2d 1360, 1361 (Ala.1986). In this case, although the prosecutor went to the extreme limit of that "considerable latitude" in making this comment, we do not find that he ventured into the land of reversible error. We have reviewed and have found no plain error in the prosecutor's argument in the sentence phase of the trial.

XVII.
The trial court did not err in permitting the prosecutor to make a rebuttal argument at the sentence phase of the trial. Alabama Code 1975, § 13A-5-46(d), merely provides: "After hearing the evidence and the arguments of both parties at the sentence hearing, the jury shall be instructed on its function and on the relevant law by the trial judge." Because the prosecution has the burden of proof at a sentence hearing, see § 13A-5-45(e), the prosecutor may properly be permitted to present both the initial and the rebuttal argument. Compare Rule 19.1(i), A.R.Crim.P. This is a matter which lies within the discretion of the trial court. See Powell v. State, 224 Ala. 540, 549-50, 141 So. 201, 209, reversed on other grounds, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

XVIII.
The appellant contends that the trial court erred in failing to give 17 of his 18 requested jury instructions at the sentence stage of his trial and also in overruling his objections to certain portions of the court's oral charge to the jury. In reviewing this issue, we apply those principles collected in Kuenzel v. State, 577 So.2d at 517, especially those that the entire charge must be construed as a whole and that the language of the charge must be given a reasonable construction, and not a strained and unreasonable one. Here, the trial court's oral *1271 charge (R. 518-31) was extensive and covered the essential principles contained in the appellant's requested charges. The instructions of the trial court contain no "plain error" and were substantially identical to the pattern jury instructions adopted by the Alabama Supreme Court. See Ex parte Harrell, 470 So.2d 1309, 1315 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
Although the appellant did not object to the court's refusal to give all of his requested instructions, he did raise five objections to the judge's oral charge.
1) The appellant objected because the trial judge instructed the jury that it "should" consider mitigating circumstances and not that it "must" consider them. Although the trial court did use the terms "may" and "should" in connection with the jury's duty to consider and find the existence of any mitigating circumstances, a review of the court's entire charge reveals that the court made it clear that consideration of mitigating circumstances was an obligation on the jury that it "must" perform in arriving at its verdict, and not something that was optional.
2) The appellant objected because the jury was instructed on reasonable doubt when in the sentencing process any doubt is appropriate. However, Alabama law provides that an aggravating circumstance must be found to exist beyond a reasonable doubt before it can be considered. See Ala.Code 1975, § 13A-5-45(e). Furthermore, capital defendants have no right to demand jury consideration of "residual doubts" in the sentencing phase. Franklin v. Lynaugh, 487 U.S. 164, 172-76, 108 S.Ct. 2320, 2326-28, 101 L.Ed.2d 155 (1988).
3) The appellant objected to the reading of the mitigating factor that the defendant has no significant history of prior criminal activity and maintains that it was prejudicial. The trial court's reading of the entire list of statutory mitigating factors was proper. See McWilliams v. State, [Ms. 6 Div. 190, August 23, 1991], 1991 WL 184448 (Ala.Cr.App.1991). As a practical matter, it would be impossible for the jury to determine the existence of any statutory mitigating factor unless it had been instructed on what those factors were.
4) The appellant objected to the instructions that precluded any consideration of sympathy. Those instructions were proper. See California v. Brown, 479 U.S. 538, 543, 107 S.Ct. 837, 838, 93 L.Ed.2d 934 (1987); Williams v. State, 601 So.2d 1072 (Ala.Cr.App.1991); Kuenzel, 577 So.2d at 494-98.
5) Finally, the appellant objected on the ground that the jury should have been instructed that the death penalty should be unanimous. The jury was properly instructed that at least ten jurors had to agree in order to recommend the death penalty. § 13A-5-46(f).

XIX.
This cause must be remanded because the trial court failed to indicate whether it considered certain mitigating evidence offered by the appellant. At the sentence phase of his trial, the appellant argued the presence of two statutory mitigating factors: 1) "The capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance," § 13A-5-51(2); and 2) "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired," § 13A-5-51(6).
At the sentence hearing, Dr. Koch testified that the appellant was schizophrenic. His finding was based on his examination of the appellant almost one year after the commission of the crime and upon a finding that the appellant had previously been diagnosed as schizophrenic and incompetent to stand trial in the State of Ohio, where he spent two years in a mental hospital. Dr. Koch indicated that the appellant interpreted the victim's expletive, "Fuck you," as meaning "I'm going to fuck you," and that the appellant interpreted the remark literally as a threat of homosexual assault and reacted in an extremely drastic manner. In addition, there was other evidence that the *1272 appellant had been diagnosed as schizophrenic in 1970 and had spend two years in a mental hospital.
The trial court rejected the existence of both of the argued-for statutory mitigating circumstances. In his sentencing order the trial court found:
"The Court considered whether or not there were any mitigating circumstances present. The Court considered each of the mitigating circumstances contained in Section 13A-5-51 and finds that none of the mitigating circumstances were present. The Court specifically finds that.... he was not under the influence of extreme mental or emotional disturbance [§ 13A-5-51(2)]; ... the Defendant was not under any extreme duress...; the Defendant did possess the capacity to appreciate the criminality of his conduct, and he was able to conform his conduct to the requirements of the law, and it was not substantially impaired [§ 13A-5-51(6) ]." R. C-132.
In its order, the trial court did not indicate that it found any specific mitigating circumstance. However, that order does contain the following language, which tends to indicate that mitigating circumstances were present and were considered:
"After weighing these aggravating and mitigating circumstances, the Court asked the Defendant if [he] had anything to say before sentence of law was imposed upon him. * * * After considering all of the facts involved in this case and after considering the aggravating [circumstances] and finding that they outweigh the mitigating circumstances including any mitigating circumstances that are not listed in the Code of Alabama,... the Court finds beyond a reasonable doubt that the aggravating circumstances outweigh all mitigating circumstances,..." R. C-133.
Considering the vagueness of the trial court's written findings, this Court should not be forced to speculate on the meaning of the trial court's order or on the reason or reasons the trial court rejected the appellant's psychological evidence as a statutory mitigating circumstance. Additionally, the trial court failed to state whether it considered the evidence of the appellant's mental health as a nonstatutory mitigating circumstance, and whether it gave that evidence any weight or significance. Section 13A-5-47(d) requires the trial court to "enter specific written findings concerning the existence or nonexistence of ... each mitigating circumstance enumerated in section 13A-5-51 [statutory mitigating circumstances], and any additional mitigating circumstances offered pursuant to section 13A-5-52 [nonstatutory mitigating circumstances]."
We fully recognize that "[a] factfinder is not bound by expert testimony `even if all of the witnesses are presented by only one side.'" Ellis v. State, 570 So.2d 744, 752 (Ala.Cr.App.1990). "In Alabama, opinion testimony of an expert witness is binding upon a jury only when such testimony concerns a subject which is exclusively within the knowledge of experts and the testimony is uncontroverted." Jefferson County v. Sulzby, 468 So.2d 112, 116 (Ala.1985). "An expert's opinion, however, is not conclusive on the trial court, even though uncontroverted. See Kroger Co. v. Millsap, 280 Ala. 531, 196 So.2d 380 (1967). Rather, a trial court must look to the entire evidence and its own observations in deciding factual issues." Williams v. City of Northport, 557 So.2d 1272, 1273 (Ala.Civ. App.1989), cert. denied, ___ U.S. ___, 111 S.Ct. 71, 112 L.Ed.2d 45 (1990). "Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact." Harrell v. State, 470 So.2d 1303, 1308 (Ala.Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
On remand, the trial court is directed to enter a written order stating the reason or reasons why it rejected the mental health evidence offered by the appellant as a statutory mitigating circumstance. Furthermore, the trial court is directed to indicate what weight, if any, was given to the appellant's mental health evidence as a nonstatutory mitigating circumstance. If the trial court found that evidence to be of no consequence, it should state its reason for so doing. Finally, the trial court should state the reason it found the aggravating circumstances *1273 to outweigh any mitigating circumstances. This remand neither anticipates nor requires an evidentiary hearing. The trial court shall file its written order in this Court within 30 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
On remand, the trial judge complied with the directions of this Court, set forth in Part XIX of the opinion on original submission by entering a written order in which he found "that there were no statutory mitigating circumstances or non-statutory mitigating circumstances present that should cause the sentence to be life without possibility of parole." In part, the trial judge stated:
"The Court considered all of the testimony of Dr. Koch and all of the other testimony and arguments and finds that the Defendant killed the deceased because he was angry that his cup had been accidentally knocked over by a basketball. The Defendant acted intentionally out of anger, not out of fear that there was going to be a sexual attack made upon him by the deceased. The Court finds that the testimony of Dr. Koch was not believable and was discredited by the District Attorney in his cross-examination. The testimony of Dr. Koch and the transcript of Dr. Faruki's testimony in 1970 were considered. I did not find this evidence to be sufficient to raise a doubt that the Defendant was under the influence of extreme mental or emotional disturbance; or that he acted under extreme duress; or that the Defendant did not have the capacity to appreciate the criminality of his conduct; or that the Defendant was substantially impaired and unable to conform his conduct to the requirements of the law. The overwhelming evidence was that the Defendant in a fit of anger retrieved a hidden weapon and intentionally stabbed the deceased.
"After considering all of the statutory mitigating circumstances, I do not find that any exists; nor do I find any nonstatutory mitigating circumstances to exist in this case.
"The recommendation of the jury that the Defendant be given a sentence of death is upheld. I do not find any mitigating circumstances present that would warrant any lesser sentence. The Defendant is a vicious killer who had previously been convicted of murder and had a significant prior criminal history."
The trial judge's return to remand satisfies the requirement of § 13A-5-47(d) that the trial court "enter specific written findings" concerning the existence or nonexistence of each statutory mitigating circumstance and any nonstatutory mitigating circumstance offered by the defendant.
The trial judge's written order is also sufficient to allow this Court to perform the review required by § 13A-5-53 in those cases wherein the death penalty has been imposed. This Court has searched the record and has found no error adversely affecting the rights of the appellant in either the guilt or sentence proceedings. The trial judge's findings concerning the aggravating and mitigating circumstances, as supplemented in the return to remand, are reasonable and are supported by the evidence.
Under the factors set forth in § 13A-5-53(b), death is the proper sentence. There is no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence. The sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both this particular crime and this particular appellant.
Consequently, the judgment of conviction and the sentence of death are affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] One veniremember was excused for a cause unrelated to pretrial publicity.
[2] The appellant also contends that the testimony of Deputy Sheriff Billy Smith should have been suppressed. District attorney's investigator Edd Billingsley testified that Deputy Smith was present during the appellant's interrogation. However, after a second motion to suppress had been denied, and immediately before the prosecution's first witness at trial was called, the district attorney informed the trial court: "I have learned from Edd Billingsley that Billy Smith was not present when the statement was taken of Mr. Carroll. He told me he checked it out, and he was somewhere else." R. 263. That statement was not contested. Although we do not address Smith's testimony in the body of our opinion, we reach the same conclusion with regard to his testimony as we do with the other witnesses.
[3] "[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).
[4] "`Judgment' means the adjudication of the court based upon a plea of guilty by the defendant, upon the verdict of the jury, or upon its own finding following a nonjury trial, that the defendant is guilty or not guilty." Rule 26.1(a)(1), A.R.Crim.P.
[5] "`Sentence' means the pronouncement by the court of the penalty imposed upon the defendant after a judgment of guilty." Rule 26.1(a)(2), A.R.Crim.P.
[6] "`Determination of guilt' means a verdict of guilty by a jury, a finding of guilty by a court following a nonjury trial, or the acceptance by the court of a plea of guilty." Rule 26.1(a)(3), A.R.Crim.P.
[7] Rules 26.1(a)(1), (2), and (3) are substantially the same as Rules 1(a), (b), and (c) of the Alabama Temporary Rules of Criminal Procedure, which were effective February 23, 1980.
[8] The prosecutor stated in the hypothetical question that the report involved an mental examination of the appellant that occurred two days before the homicide. However, after Dr. Koch had left the witness stand, the prosecutor corrected his mistake and made his apology in the presence of the jury. R. 497-98. That error was commented on by defense counsel in his closing argument. R. 509-10.